## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | : | Case No. 17-52717 |
| | : | Chapter 7 |
| Hadsell Chemical Processing, LLC, | : | Hon. John E. Hoffman, Jr. |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| Susan L. Rhiel, Trustee, | : | Adv. Pro. No. |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| Lori Dawn Meyers | : | |
| 2558 Onandaga Drive | : | |
| Upper Arlington, OH 43221, | : | |
| | : | |
| and | : | |
| | : | |
| Lori Dawn Meyers | : | |
| Owner/Beneficiary of Self Directed IRA's | : | |
| FBO Lori Dawn Meyers | : | |
| 2558 Onandaga Drive | : | |
| Upper Arlington, OH 43221, | : | |
| | : | |
| and | : | |
| | : | |
| Christopher Lee Yerington | : | |
| 2558 Onandaga Drive | : | |
| Upper Arlington, OH 43221, | : | |
| | : | |
| and | : | |
| | : | |
| Christopher Lee Yerington | : | |
| Owner/Beneficiary of Self Directed IRA's | : | |
| FBO Christopher Lee Yerington | : | |
| 2558 Onandaga Drive | : | |
| Upper Arlington, OH 43221, | : | |
| | : | |
| and | : | |
| | : | |

Park National Bank, as Trustee for      :
The Lori D. Meyers, Self-Directed IRA    :
140 East Town Street, Suite 1400        :
Columbus, OH 43215,                     :
                                        :
and                                     :
                                        :
Park National Bank, as Trustee for      :
The Christopher L. Yerington             :
Self-Directed IRA,                      :
140 East Town Street, Suite 1400        :
Columbus, OH 43215,                     :
                                        :
and                                     :
                                        :
AdvantaIRA Trust, LLC                   :
F.B.O. Lori Dawn Meyers                 :
1520 Royal Palm Square Blvd. #320       :
Fort Myers, FL 33919,                   :
                                        :
and                                     :
                                        :
AdvantaIRA Trust, LLC                   :
F.B.O. Christopher Lee Yerington        :
1520 Royal Palm Square Blvd. #320       :
Fort Myers, FL 33919,                   :
                                        :
                    Defendants.          :
_____:

## COMPLAINT AND OBJECTION TO CLAIMS
### [CLAIM NOS. 42 (as amended), 58, 59, 60 and 61]

Plaintiff Susan L. Rhiel ("Plaintiff" or the "Trustee"), the duly appointed chapter 7 trustee

for the bankruptcy estate of Hadsell Chemical Processing, LLC ("HCP" or the "Debtor"), the

debtor in the above-captioned case, hereby files this *Complaint and Objection to Claims* (this

"Complaint") against Defendants Lori D. Meyers ("Meyers"), both individually and as owner and

beneficiary of Self-Directed IRA's FBO Lori Dawn Meyers, Christopher L. Yerington

("Yerington"), both individually and as owner and beneficiary of Self-Directed IRA's FBO

Christopher L. Yerington, Park National Bank as Trustee for The Lori D. Meyers Self-Directed

2

IRA (the "Meyers SDIRA"), Park National Bank as Trustee for The Christopher L. Yerington Self-Directed IRA (the "Yerington SDIRA"), AdvantaIRA Trust, LLC F.B.O. Lori Dawn Meyers (the "Meyers AdvantaIRA") and AdvantaIRA Trust, LLC F.B.O. Christopher Lee Yerington (the "Yerington AdvantaIRA"). In support of the relief requested herein, the Trustee states the following, on information and belief, together and in the alternative:

## I.    PRELIMINARY STATEMENT

1.     This adversary proceeding arises out of a Ponzi scheme perpetrated through the Debtor and its affiliates, involving extensive fraud and the issuance of illegal securities. As pleaded by the United States Securities and Exchange Commission (the "SEC") in a case filed in the United States District Court for this District asserting violations of federal securities laws,[1] the Debtor's former president and owner, Robert Walton, Jr. ("Walton"), raised approximately $12 million through the offer and sale of promissory notes (the "Notes") to 65 investors in at least five states. Further, that Walton misrepresented to those investors that the Notes were signed and guaranteed by HCP's co-owner, Don Hadsell ("Hadsell"), when they were not, and that Walton bolstered the false guarantees by providing certain of the investors Hadsell's falsified personal financial statements, all without Hadsell's knowledge or approval. And, finally, that Walton also misrepresented to investors that HCP had received multi-million dollar contracts and was profitable, when, in reality, the contracts did not exist and HCP was operating at a loss. To bolster these misrepresentations, Walton provided investors with copies of sham purchase orders he had created and false financial statements for HCP that reported a profit instead of a loss.

2.     Walton was assisted by a number of individuals in the implementation of this fraud. Defendant Yerington was one such individual. Defendant Yerington worked closely with Walton,

---

[1] The case is currently pending in the United States District Court for the Southern District of Ohio Case No. 2:17-cv-432 (the "SEC Action").

actively and aggressively soliciting new investors, raising a significant amount of HCP's indebtedness under the Notes. Indeed, together with Defendant Meyers, he frequently served as a conduit for those investors, including their own family members. Defendants Yerington and Meyers were well aware that the proceeds of loans obtained in the name of HCP were instead being directed to HCP's affiliates and other related entities.

3.      Defendant Yerington, both individually and through his spouse, Defendant Meyers, and their respective retirement vehicles, the Meyers SDIRA, the Yerington SDIRA, the Meyers AdvantaIRA and the Yerington AdvantaIRA (collectively, the "SDIRAs") have asserted multi-million dollar claims herein against the Debtor (collectively, the "Claims") based on alleged loans, many of which are not reflected in the Debtor's books and records and were instead investments in the Debtor's affiliates and other entities, all pursuant to cognovit promissory notes that were secured by all assets of the Debtor and that contained excessive interest rates and other unconscionable terms.

4.      Finally, Defendants Yerington and Meyers, both for themselves individually and for their respective SDIRAs, obtained hundreds of thousands of dollars in payments from HCP on their Notes and otherwise, either in whole or in substantial part out of the proceeds of investments made by later investors in a classic Ponzi scheme.

5.      For these reasons, as detailed below, the Trustee objects to the Claims of Yerington, Meyers and their SDIRAs (collectively, the "Defendants"), seeks to subordinate such Claims, and avoid and recover all payments made to these Defendants.

## II.      JURISDICTION AND VENUE

6.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the general order of reference in effect in this District. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, this adversary proceeding relates to the case

filed on April 28, 2017 (the "Petition Date") by the Debtor Hadsell Chemical Processing, LLC

under chapter 7 of title 11 (the "Bankruptcy Code") of the United States Code and pending as case

no. 17-52717 before the United States Bankruptcy Court for the Southern District of Ohio. And

further that Plaintiff consents to the entry of a final order or judgment by this Court.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) in that this adversary

proceeding arises in a case under the Bankruptcy Code currently pending before this Court.

8.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C), (F), (K),

and (O).

### III.    PARTIES

9.      The Plaintiff is the duly appointed and acting chapter 7 trustee for the estate of the

Debtor.

10.     Upon information and belief, Defendant Yerington is an individual currently

residing in Upper Arlington, Ohio. He is non-practicing physician, who attended Case Western

Reserve University School of Medicine in Cleveland, Ohio, the Fisher School of Business at The

Ohio State University and Capital University School of Law. At all times relevant to this

Complaint, Yerington was well-informed as to the operations of HCP and its affiliates and was

actively and substantively involved in raising capital for HCP, including the dissemination of

financials to potential investors. Yerington represented that he was a business advisor to HCP and

is listed at the top of HCP's organizational chart as the Chair of its Advisory Board. Defendant

Yerington is therefore an "insider," within the meaning of section 101(31) of the Bankruptcy Code.

Defendant Yerington is the creditor holding the Claims asserted in Claim Nos. 42-3 and 59 on the

Claims Register maintained in the Debtor's case.

11.     Upon information and belief, Defendant Meyers is an individual currently residing

in Upper Arlington, Ohio. She is a practicing physician and Assistant Professor of Anesthesiology

at The Ohio State University – College of Medicine. Defendant Meyers has been the spouse of Defendant Yerington at all times relevant to this Complaint. Defendant Meyers is therefore an "insider," within the meaning of section 101(31) of the Bankruptcy Code. She is also the creditor holding the Claims asserted in Claim Nos. 42-2 and 58 on the Claims Register maintained in the Debtor's case.

12.     Upon information and belief, the Defendant SDIRAs are self-directed individual retirement account investment entities owned and controlled by Defendants Yerington and Meyers and maintained for their benefit by third party administrators acting as custodians or trustees. The Defendant SDIRAs are the creditors holding the Claims asserted in Claim Nos. 42-4, 42-5, 60 and 61 on the Claims Register maintained in the Debtor's case.

## IV.     FACTS COMMON TO ALL COUNTS

### The Debtor and the Related Entities

#### Hadsell Chemical

13.     HCP is an Ohio limited liability company, originally formed in late 2011 by Hadsell and Walton as co-owners to provide compounding and chemical tolling, processing, milling, blending and packaging services for companies. Hadsell served initially as HCP's president and Walton as its Executive Vice President. Thereafter, in April of 2012, HCP's operating agreement was restated and in connection therewith Walton was elected to operate HCP as its President, while Hadsell was elected to operate HCP as its Executive Vice President. HCP operated out of a large warehouse located in Waverly, Ohio that was transferred by Hadsell to HCP.

#### Relevant Compounding LLC

14.     Relevant Compounding LLC ("Relevant Compounding") is an Ohio limited liability company formed by Walton in 2013 as a compounding pharmacy business. Relevant

Compounding operated out of HCP's facility in Waverly, Ohio. Both Defendant HCP and Defendant Meyers, among others, were members of Relevant Compounding.

## Copi Consulting, LLC

15.    Copi Consulting, LLC ("COPI") is a Colorado limited liability company formed as an investment and management vehicle for companies engaged in the production and dispensing of medical cannabis products. Information provided to the Trustee reflects that Buckeye Specialty Processing, LLC ("Buckeye Specialty") initially held units representing a 43.24% interest in COPI.

## Buckeye Specialty Processing

16.    Buckeye Specialty is an Ohio limited liability company initially formed in 2012 by Scott D. Evans, HCP's general counsel, as organization number 2119763, the certificate for which was amended or restated in 2015 to rename Buckeye Specialty as Buckeye Health and Wellness, LLC. Information provided to the Trustee further reflects that Walton served as an initial manager of Buckeye Specialty and that he held units representing a 61% interest in Buckeye Specialty.

## Waverly Metals Group, LLC

17.    Waverly Metals Group LLC ("Waverly Metals") was an Ohio limited liability company formed by Walton in May of 2013. Based on information provided to the Trustee, Waverly Metals was formed by Hadsell and Walton to engage in the recycling business. Pursuant to a Certificate of Dissolution filed with the Ohio Secretary of State on December 22, 2014, Waverly Metals was dissolved effective December 16, 2014.

## **Events Leading to the Bankruptcy Case**

18.    As president of HCP Walton raised approximately $12 million between April of 2012 and October of 2015 through the issuance of the Notes, representing therein that the money raised would be used for HCP's business. Although varying in certain other details, the Notes also

all contained warrants of attorney and were to be collateralized by blanket liens against HCP's assets.

19.      As asserted in the SEC Action, these Notes (which constitute "securities" as defined in section 101(49) of the Bankruptcy Code) were issued in violation of federal securities law since (a) no registration statement was in effect or filed with the SEC in connection with the Notes, (b) no disclosure documents, such as an offering memorandum or audited financials, were provided to potential investors, and (c) no inquiry or information was obtained as to whether the investors qualified as accredited investors.

20.      As also asserted in the SEC Action, material misrepresentations were made to the investors both with respect to the financial operations of HCP by grossly inflating revenue from contracts, and by forging Hadsell's signature as guarantor of the Notes.

21.      Defendants Yerington and Meyers, both individually and through their SDIRAs, were early and continued investors through certain Notes, and worked closely with Walton in actively and aggressively obtained additional investors though the Notes.

22.      From the information obtained and reviewed by the Trustee to date it appears that a material portion of the proceeds of the Notes were used for the purposes of (a) paying interest and costs to other holders of the Notes, and (b) funding various other entities formed by Messrs. Walton and/or Hadsell, including Relevant Compounding, Waverly Metals, Buckeye Specialty and COPI, and using HCP as a mere conduit for such funding.

23.      Upon information and belief, the total principal amount of the Notes issued was approximately $12 million.

24.      As of the Petition Date, approximately $8 million remained outstanding on the Notes, while the Debtor's bank accounts had been nearly depleted.

25.     In fact, it does not appear that the Debtor ever operated profitably or was viable. The federal income tax returns obtained and reviewed to date by the Trustee reflect (a) that HCP had negative business income of more than $1.3 million in 2012, $2.0 million in 2013, and $2.0 million in 2014 and (b) that the amount of its liabilities substantially exceeded the value of its assets each such year, and that the Debtor was therefore "insolvent" as defined both in section 101(32) of the Bankruptcy Code and section 1336.02 of the Ohio Revised Code during such years.

26.     Indeed, the Debtor's financial records reflect that the Debtor's operations were sustained only through periodic infusions of proceeds from the Notes through at least 2016 and therefore the Debtor's insolvency was unchanged.

27.     Ultimately, in or around September of 2015, the holders of certain Notes approached Hadsell to complain that payments on their Notes were delinquent. Hadsell confronted Walton concerning those Notes whereupon Walton resigned from his position with the Debtor in December 2015.

28.     Hadsell thereafter continued the Debtor's operations to some degree until the Debtor's assets were seized by the Pike County, Ohio Sheriff pursuant to a writ of execution issued by a state court in favor of Defendants Yerington, Meyers and their SDIRAs who had obtained judgment by confession against the Debtor under the warrants of attorney (the "State Court Action")[2]. Shortly thereafter, HCP commenced the above-captioned case (the "Bankruptcy Case") by filing a voluntary petition under chapter 7 of the Bankruptcy Code on April 28, 2017 (the "Petition Date").

---

[2]  Franklin County, Ohio Court of Common Pleas Case no. 16 CV 010186.

## The Claims

29.    Pursuant to the notice issued in the Bankruptcy Case, the Defendants filed a single

proof of claim [Claim No. 42-1] asserting a secured claim against HCP in the amount of

$2,033,751.33, and as support attaching copies of the various Notes issued by HCP in their favor

and related documents, and the cognovit judgment obtained by them in the State Court Action.

30.    At the Trustee's request and in accordance with the *Stipulation and Third Agreed

Order on Motion of Lori D. Meyers and Chris L. Yerington for Relief from Stay as to Personal

Property of Debtor* entered on January 4, 2018 in the Bankruptcy Case [Doc. #104], the Defendants

each filed separate proofs of claim asserting their respective Claims on January 30, 2018, thereby

amending Claim No. 42-1 and now aggregating $3,699,284.73 (even as reduced for the apparent

duplication), an increase of more than $1,665,533.40.

### The Meyers Claims

31.    Thus, Defendant Meyers filed Claim Nos. 42-2 and 58[3] (together, the "Meyers

Claims"), each asserting a general unsecured claim in the amount of $217,760.82, and as the basis

therefor attached the following:

    A.    Defendants Yerington and Meyers personal check no. 6211 dated
November 21, 2012 made payable to HCP in the amount of $25,000.00 signed by
Defendant Meyers with the notation reading, "For 6% Interest in Buckeye Specialty
Processing, LLC" ("LM Check No. 1")

    B.    Defendants Yerington and Meyers personal check no. 2038 dated
November 28, 2012 made payable to HCP in the amount of $75,000.00 signed by
Defendant Meyers with the notation reading, "For 6% Buckeye Specialty Prc"
("LM Check No. 2")

    C.    Defendants Yerington and Meyers personal check no. 6341 dated
February 12, 2015 made payable to HCP in the amount of $100,000.00 signed by

---

[3] The two claims are otherwise identical and as set forth below the Trustee objects to the extent
that such claims are in fact duplicative.

Defendant Meyers with the notation reading, "For Float Loan 2/12/15 – 3/10/15" ("<u>LM Check No. 3</u>")

      D.     Ohio Commercial Promissory Note dated August 11, 2014 in the original principal amount of $75,000.00 plus $33,000.00 simple interest plus fees given by HCP and Relevant Compounding to Defendant Meyers, and payable in twelve monthly payments of $9,000.00 beginning September 1, 2014 and ending August 1, 2015 (the "<u>08112014 LM Note</u>"). This Note (i) includes a guaranty by Hadsell and his entity Hadsell Development, LLC, (ii) states that the Indebtedness thereunder and all other obligations owed by the borrowers or guarantors are secured by a blanket lien on their assets as more specifically provided for in a security agreement of even date, and (iii) contains a cognovit provision/warrant of attorney.

      E.     Ohio Guaranty Note dated November 28, 2012 in the amount of $100,000.00 plus 5% interest pursuant to which HCP (defined as Guarantor) promised to pay Defendant Meyers "the original investment of $100,000.00 made on November 21, 2012 plus 5% interest on or after September 1, 2013 and no later than October 1, 2013, for which [Meyers] received a 6% ownership in Buckeye Specialty … if [Meyers] is not satisfied with Buckeye Specialty Processing's Schedule of profit disbursements or lack thereof, or any other reason deemed by [Meyers]" (the "<u>11282012 LM Note</u>"). This note further provides that Meyers was required to exercise her right to reimbursement by close of business October 1, 2013 otherwise "this Guaranty will become null and void," and Meyers would retain her retain 6% ownership interest in Buckeye Specialty. This Note also contains a cognovit provision/warrant of attorney.

      F.     Ohio Guaranty Note dated September 27, 2013 in the amount of $60,000.00 plus 10% interest pursuant to which HCP (defined as Guarantor) promised to pay Defendant Meyers "the original investment of $60,000.00 for which [Meyers] received a 6% ownership in [Relevant Compounding] plus 10%" (the "<u>09272013 LM Note</u>"). This note further provides that the guaranteed payment was subject to certain conditions having been met, including that "the balance owed Guarantor is to be paid out of [Meyer's] first scheduled profit disbursement on 3.31.14."

Pursuant to the foregoing and as set forth in the Supplement to the Meyers Claims, Defendant Meyers asserts a general unsecured claim for compensatory damages in the aggregate amount of $217,760.82, comprised of $87,760.82 plus interest, $30,000.00 plus interest and $100,000.00 plus interest.

<u>The Yerington Claims</u>

32.    In addition, Defendant Yerington filed Claim Nos. 42-3 and 59[4] (together, the

"<u>Yerington Claims</u>"), each asserting a general unsecured claim in the amount of $100,000.00, and

in support thereof attached the following Exhibits:

> A.    Defendants Yerington and Meyers personal check no. 6211 dated
> November 21, 2012 made payable to HCP in the amount of $25,000.00 signed by
> Defendant Meyers with the notation reading, "For 6% Interest in Buckeye Specialty
> Processing, LLC."

> B.    Defendants Yerington and Meyers personal check no. 2038 dated
> November 28, 2012 made payable to HCP in the amount of $75,000.00 signed by
> Defendant Meyers with the notation reading, "For 6% Buckeye Specialty Prc."

> C.    Defendants Yerington and Meyers personal check no. 6341 dated
> February 12, 2015 made payable to HCP in the amount of $100,000.00 signed by
> Defendant Meyers with the notation reading, "For Float Loan 2/12/15 – 3/10/15."

Pursuant to the foregoing and as set forth in the Supplement to the Yerington Claims, Yerington

asserts a general unsecured claim for compensatory damages in the amount of $100,000.00 plus

interest.

<u>The Meyers IRA Claims</u>

33.    In addition, Defendant Meyers, as Owner and Beneficiary of Self-Directed IRA's

FBO Lori Dawn Meyers, filed Claim Nos. 42-4 and 60[5] (together, the "<u>Meyers IRA Claims</u>"),

each asserting a secured claim in the amount of $1,883,557.23, and in support thereof attached the

following Exhibits:

> A.    Ohio Commercial Promissory Note dated April 23, 2012 in the
> original principal amount of $200,000.00 pursuant to which HCP promised to pay
> the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee the principal
> sum of $200,000.00 plus expenses of $10,500 and Fees (as therein defined) as
> follows: (i) reimbursement of Fees by June 15, 2012; (ii) $100,000.00 by June 1,

---

[4]  The two claims are otherwise identical and as set forth below the Trustee objects to the extent
that such claims are in fact duplicative.
[5]  The two claims are otherwise identical and as set forth below the Trustee objects to the extent
that such claims are in fact duplicative.

2013; (iii) $100,000.00 by June 1, 2014; and (iv) $200,000.00 of accrued interest by June 1, 2015, for a total of $400,000.00 plus the Fees (the "04232012 LMIRA Note"). This Note also contains a cognovit provision/warrant of attorney.

   B.      Ohio Commercial Promissory Note dated May 22, 2014 in the original principal amount of $500,000.00 with annual interest of 15% compounded daily plus Fees (as therein defined) pursuant to which HCP and Relevant Compounding promise to pay to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee the principal sum of $500,000.00 plus the Fees as follows: (i) reimbursement of Fees by June 15, 2014; (ii) thirty-six monthly payments of $21,180.56 commencing November 30, 2014; and (iii) the balance by December 31, 2017 (the "05222014 LMIRA Note"). This Note (i) includes a guaranty by Walton, Hadsell and his entity Hadsell Development, LLC, (ii) states that the Indebtedness thereunder and all other obligations owed by the borrowers or guarantors are secured by a blanket lien on their assets as more specifically provided for in a security agreement of even date, and (iii) contains a cognovit provision/warrant of attorney.

   C.      Security Agreement dated May 22, 2014 given by HCP and Relevant Compounding to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee granting a security interest on all assets of HCP and Relevant Compounding to secure all of their indebtedness to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee.

   D.      Ohio Commercial Promissory Note dated June 5, 2014 in the original principal amount of $500,000.00 with annual interest of 22.668% compounded daily plus Fees (as therein defined) pursuant to which HCP and Relevant Compounding promise to pay to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee the principal sum of $500,000.00 plus the Fees as follows: (i) reimbursement of Fees by June 15, 2014; (ii) thirty-six monthly payments of $21,180.56 commencing November 30, 2014; and (iii) the balance by December 31, 2017 (the "06052014-1 LMIRA Note"). This Note (i) includes a guaranty by Walton, Hadsell and his entity Hadsell Development, LLC, (ii) states that the Indebtedness thereunder and all other obligations owed by the borrowers or guarantors are secured by a blanket lien on their assets as more specifically provided for in a security agreement of even date, and (iii) contains a cognovit provision/warrant of attorney. This Note states that it is in substitution and replacement of the 05222014 Note, above.

   E.      Ohio Commercial Promissory Note dated June 5, 2014 in the original principal amount of $100,000.00 plus $5,000.00 interest pursuant to which HCP and Relevant Compounding promise to pay to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee the principal sum of $100,000.00 plus the Fees as follows: (i) reimbursement of Fees by July 30, 2014 and (ii) a final payment of $105,000.00 on October 18, 2014 (the "06052014-2 LMIRA Note"). This Note (i) includes a guaranty by Walton, Hadsell and his entity Hadsell Development, LLC, (ii) states that the Indebtedness thereunder and all other obligations owed by the borrowers or guarantors are secured by a blanket lien on

their assets as more specifically provided for in a security agreement of even date, and (iii) contains a cognovit provision/warrant of attorney.

   F. Ohio Commercial Promissory Note dated April 30, 2015 in the original principal amount of $928,846.94 plus 15% interest compounded monthly pursuant to which HCP and Relevant Compounding promise to pay to the AdvantaIRA Trust, LLC F.B.O. Lori Dawn Meyers as follows: (i) reimbursement of Fees within 15 days of request; (ii) monthly interest payments; and (iii) $928,846.94 on or before March 31, 2019 (the "04302015 LMIRA Note"). This Note includes a prepayment penalty of 50% of all interest, a guaranty by Walton and Hadsell, states that the Indebtedness thereunder and all other obligations owed by the borrowers or guarantors are secured by a blanket lien on their assets as more specifically provided for in a security agreement of even date, and contains a cognovit provision/warrant of attorney.

   G Security Agreement dated May 22, 2014 given by HCP and Relevant Compounding to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee granting a security interest on all assets of HCP and Relevant Compounding to secure all of their indebtedness to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee. (This appears to be a duplicate of Exhibit C above).

   H/I. Security Agreements dated June 5, 2014 and July 16, 2014 given by HCP and Relevant Compounding to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee granting a security interest on all assets of HCP and Relevant Compounding to secure all of their indebtedness to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee.

   J. Security Agreement dated August 11, 2014 given by HCP and Relevant Compounding to Lori D. Meyers granting a security interest on all assets of HCP and Relevant Compounding to secure all of their indebtedness to Lori D. Meyers.

   K. Security Agreement dated April 30, 2015 given by HCP and Relevant Compounding to AdvantaIRA IRA Trust, LLC F.B.O. Lori Dawn Meyers granting a security interest on all assets of HCP and Relevant Compounding to secure all of their indebtedness to AdvantaIRA IRA Trust, LLC F.B.O. Lori Dawn Meyers.

   L. UCC Financing Statement filed in the name of the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee on July 7, 2014.

Pursuant to the foregoing and as set forth in the Supplement to the Meyers IRA Claims, Defendant

Meyers asserts a secured claim in the aggregate amount of $1,883,557.23, comprised of

$748,501.55 plus interest at the rate of 18% since September 30, 2016 and $1,135,055.68 plus

interest at the rate of 20% since September 30, 2016.

<u>The Yerington IRA Claims</u>

34.    Finally, Defendant Yerington, as Owner and Beneficiary of Self-Directed IRA's

FBO Christopher Lee Yerington, filed Claim Nos. 42-5 and 61[6] (together, the "<u>Yerington IRA</u>

<u>Claims</u>"), each asserting a secured claim in the amount of $1,497,966.68, and in support thereof

attached the following Exhibits:

> A.    Ohio Commercial Promissory Note dated June 5, 2014 in the
> original principal amount of $500,000.00 with annual interest of 22.668%
> compounded daily plus Fees (as therein defined) pursuant to which HCP and
> Relevant Compounding promise to pay to the Christopher Yerington Self-Directed
> IRA, Park National Bank, Trustee the principal sum of $500,000.00 plus the Fees
> as follows: (i) reimbursement of Fees by June 15, 2014; (ii) thirty-six monthly
> payments of $21,180.56 commencing November 30, 2014; and (iii) the balance by
> December 31, 2017 (the "<u>06052014 CYIRA Note</u>"). This Note (i) includes a
> guaranty by Walton, Hadsell and his entity Hadsell Development, LLC, (ii) states
> that the Indebtedness thereunder and all other obligations owed by the borrowers
> or guarantors are secured by a blanket lien on their assets as more specifically
> provided for in a security agreement of even date, and (iii) contains a cognovit
> provision/warrant of attorney.

> B.    Ohio Commercial Promissory Note dated April 30, 2015 in the
> original principal amount of $613,307.96 plus 15% interest compounded monthly
> pursuant to which HCP and Relevant Compounding promise to pay to the
> AdvantaIRA Trust, LLC F.B.O. Christopher Lee Yerington as follows: (i)
> reimbursement of Fees within 15 days of request; (ii) monthly interest payments;
> and (iii) $613,307.96 on or before March 31, 2019 (the "<u>04302015 CYIRA Note</u>").
> This Note includes a prepayment penalty of 50% of all interest, a guaranty by
> Walton and Hadsell, states that the Indebtedness thereunder and all other
> obligations owed by the borrowers or guarantors are secured by a blanket lien on
> their assets as more specifically provided for in a security agreement of even date,
> and contains a cognovit provision/warrant of attorney.

> C.    Security Agreement dated June 5, 2014 given by HCP and Relevant
> Compounding to the Christopher Yerington Self-Directed IRA, Park National
> Bank, Trustee granting a security interest on all assets of HCP and Relevant

---

[6]  The two claims are otherwise identical and as set forth below the Trustee objects to the extent
that such claims are in fact duplicative.

Compounding to secure all of their indebtedness to the Lori D. Meyers Self-Directed IRA, Park National Bank, Trustee.

D.     Security Agreement dated April 30, 2015 given by HCP and Relevant Compounding to AdvantaIRA IRA Trust, LLC F.B.O. Christopher Lee Yerington granting a security interest on all assets of HCP and Relevant Compounding to secure all of their indebtedness to AdvantaIRA IRA Trust, LLC F.B.O. Christopher Lee Yerington.

E.     UCC Financing Statement filed in the name of the Christopher Yerington Self-Directed IRA, Park National Bank, Trustee on July 7, 2014.

Pursuant to the foregoing and as set forth in the Supplement to the Yerington IRA Claims, Defendant Yerington asserts a secured claim in the aggregate amount of $1,497,966.68, comprised of $748,501.24 plus interest at the rate of 18% since September 30, 2016 and $749,465.44 plus interest at the rate of 20% since September 30, 2016.

## Payments to the Defendants

35.     Based on information provided to the Trustee, the Defendants Meyers ("LM") and Yerington ("CY") were paid by HCP on or about the following dates the following amounts (each a "Payment" and collectively, the "Payments") prior to the Petition Date aggregating $523,253.12 for the reasons noted below and from the sources noted below:

| Date | Amount | Notes | Recipient(s) |
|---|---|---|---|
| 08232013 | $ 106,000.00 | Repayment of investment due on 06152013 | LM |
| 04232014 | 2,000.00 | Unknown | LM/CY |
| 06092014 | 100,000.00 | Repayment of investment | LM |
| 06092014 | 30,000.00 | Repayment of investment + Expenses | LM |
| 09092014 | 9,000.00 | Unknown | LM/CY |
| 11132014 | 18,000.00 | Repayment of investment + Expenses | LM |
| 12122014 | 47,000.00 | Repayment of investment + Expenses | LM |
| 01092015 | 9,000.00 | Repayment of investment + Expenses | LM |
| 01202015 | 25,000.00 | Repayment of investment | LM |
| 02272015 | 22,145.36 | Repayment of investments (LM/RM) and Expenses | LM |
| 05112015 | 78,000.00 | Repayment of investment | LM |
| 06092015 | 11,610.59 | Repayment of investment (from HCP Chase Account) | LM |
| 06092015 | 7,666.35 | Repayment of investment (from HCP Chase Account) | CY |

| 07132015 | 11,610.59 | Repayment of investment (from HCP Chase Account) | LM |
| 07132015 | 7,666.35 | Repayment of investment (from HCP Chase Account) | CY |
| 08172015 | 11,610.59 | Repayment of investment (from HCP Chase Account) | LM |
| 08172015 | 7,666.35 | Repayment of investment (from HCP Chase Account) | CY |
| 09022015 | 11,610.59 | Repayment of investment (from HCP Chase Account) | LM |
| 09022015 | 7,666.35 | Repayment of investment (from HCP Chase Account) | CY |

36.    Based on the foregoing and the additional facts specific to each count set forth below, the Trustee hereby asserts the objections and counterclaims to the Claims filed by the Defendants stated below.

## COUNT I

## OBJECTIONS TO MEYERS CLAIMS

37.    The Trustee incorporates by reference the paragraphs 1 through 36 as if fully restated herein.

38.    The Trustee objects to Meyers Claim No. 58 filed January 30, 2018 as being duplicative of Meyers Claim No. 42-2 filed January 30, 2018, and requests it be disallowed in full.

39.    The Trustee objects to the Meyers Claims to the extent based on LM Check No. 1 and LM Check No. 2 for lack of consideration to HCP since LM Check Nos. 1 and 2 state expressly that they were tendered for a 6% interest in Buckeye Specialty which was later converted into an interest in Waverly Metals, and requests the Meyers Claims be disallowed to that extent.

40.    The Trustee objects to the Meyers Claims to the extent based on LM Check No. 3 due to Defendant Meyers' failure to establish the validity and extent of any claim arising therefrom, and requests the Meyers Claims be disallowed to that extent.

41.     The Trustee objects to the Meyers Claims to the extent based on the 11282012 LM Note (i) due to Defendant Meyers' failure to establish that she satisfied the conditions for payment thereunder, and/or (ii) for lack of consideration to HCP, and requests the Meyers Claims be disallowed to that extent.

42.     The Trustee objects to the Meyers Claims to the extent based on the 09272013 LM Note (i) due to Meyers' failure to establish that she satisfied the conditions for payment thereunder, and/or (ii) for lack of consideration to HCP, and requests the Meyers Claims be disallowed to that extent.

43.     The Trustee objects to the Meyers Claims to the extent based on the 08112014 LM Note, the 11282012 LM Note and/or the 09272013 LM Note inasmuch as those Notes constitute illegal securities which are unenforceable against HCP, and requests the Meyers Claims be disallowed to that extent.

44.     The Trustee objects to the Meyers Claims pursuant to section 502(d) of the Bankruptcy Code since as set forth herein property is recoverable from Meyers under section 550 of the Bankruptcy Code and Defendant Meyers is a transferee of a transfer that is avoidable under sections 544 and 548 of the Bankruptcy Code and Defendant Meyers has not paid the amount for which Defendant Meyers is liable under section 550 of the Bankruptcy Code, and requests the Meyers Claims be disallowed to that extent.

## COUNT II

## OBJECTIONS TO YERINGTON CLAIMS

45.     The Trustee incorporates by reference the paragraphs 1 through 44 as if fully restated herein.

46.     The Trustee objects to Yerington Claim No. 59 filed January 30, 2018 as duplicative of Yerington Claim No. 42-3 filed January 30, 2018, and requests it be disallowed in full.

47.     The Trustee objects to the Yerington Claims on the grounds that all of the documentation submitted in support thereof, that being LM Check Nos. 1 through 3, is duplicative of documentation submitted in support of the Meyers Claims. The Trustee therefore requests Yerington Claim No. 42-3 be disallowed in full.

48.     The Trustee objects to the Yerington Claims to the extent based on LM Check No. 1 and LM Check No. 2 for lack of consideration to HCP since LM Check Nos. 1 and 2 state expressly that they were tendered for a 6% interest in Buckeye Specialty, and requests the Yerington Claims be disallowed to that extent.

49.     The Trustee objects to the Yerington Claims to the extent based on LM Check No. 3 due to Defendant Yerington's failure to establish the validity and extent of any claim arising therefrom, and requests the Yerington Claims be disallowed to that extent.

50.     The Trustee objects to the Yerington Claims pursuant to section 502(d) of the Bankruptcy Code since as set forth herein property is recoverable from Defendant Yerington under section 550 of the Bankruptcy Code and Yerington is a transferee of a transfer that is avoidable under sections 544 and 548 of the Bankruptcy Code and Defendant Yerington has not paid the amount for which Yerington is liable under section 550 of the Bankruptcy Code, and requests the Yerington Claims be disallowed to that extent.

## COUNT III

## OBJECTIONS TO MEYERS IRA CLAIMS

51.     The Trustee incorporates by reference the paragraphs 1 through 50 as if fully restated herein.

52.    The Trustee objects to Meyers IRA Claim No. 60 filed January 30, 2018 as being duplicative of Meyers IRA Claim No. 42-4 filed January 30, 2018, and requests it be disallowed in full.

53.    The Trustee objects to the Meyers IRA Claims to the extent based on the 04232012 LMIRA Note as unenforceable because any unpaid balance thereunder was consolidated into the 04302015 LMIRA Note, and requests it be disallowed to that extent.

54.    The Trustee objects to the Meyers IRA Claims to the extent based on the 05222014 LMIRA Note as unenforceable because (a) the 06052014-2 LMIRA Note expressly states that it is in substitution for the 05222014 LMIRA Note, (b) there was no consideration to HCP since the proceeds of the 05222014 LMIRA Note went instead to Relevant Compounding, and/or (c) any unpaid balance thereunder was consolidated into the 04302015 LMIRA Note, and requests it be disallowed to that extent.

55.    The Trustee objects to the Meyers IRA Claims to the extent based on the 06052014-1 LMIRA Note as unenforceable because (a) there was no consideration to HCP since the proceeds of the 06052014-2 LMIRA Note went instead to Relevant Compounding, and/or (b) any unpaid balance thereunder was consolidated into the 04302015 LMIRA Note, and requests it be disallowed to that extent.

56.    The Trustee objects to the Meyers IRA Claims to the extent based on the 06052014-2 LMIRA Note as unenforceable because any unpaid balance thereunder was consolidated into the 04302015 LMIRA Note, and requests it be disallowed to that extent.

57.    The Trustee objects to the Meyers IRA Claims to the extent based on 04302015 LMIRA Note due to Defendant Meyers' failure to establish the validity and extent of any claim arising therefrom, and requests the Meyers IRA Claims be disallowed to that extent.

20

58.     The Trustee objects to the Meyers IRA Claims to the extent based on the 04232012 LMIRA Note, the 05222014 LMIRA Note, the 06052014-1 LMIRA Note, the 06052014-2 LMIRA Note and/or the 04302015 LMIRA Note inasmuch as those Notes constitute illegal securities which are unenforceable against HCP, and requests the Meyers IRA Claims be disallowed to that extent.

59.     The Trustee objects to the Meyers IRA Claims pursuant to section 502(d) of the Bankruptcy Code since as set forth herein property is recoverable from Defendant Meyers and/or the Meyers SDIRAs under section 550 of the Bankruptcy Code and Defendant Meyers and/or the Meyers SDIRAs is a transferee of a transfer that is avoidable under sections 544 and 548 of the Bankruptcy Code and Defendant Meyers and/or the Meyers SDIRAs has not paid the amount for which Defendant Meyers and/or the Meyers SDIRAs is liable under section 550 of the Bankruptcy Code, and requests the Meyers IRA Claims be disallowed to that extent.

**COUNT IV**

**OBJECTIONS TO YERINGTON IRA CLAIMS**

60.     The Trustee incorporates by reference the paragraphs 1 through 59 as if fully restated herein.

61.     The Trustee objects to Yerington IRA Claim No. 61 filed January 30, 2018 as being duplicative of Yerington IRA Claim No. 42-5 filed January 30, 2018 and requests it be disallowed in full.

62.      The Trustee objects to the Yerington IRA Claims to the extent based on the 06052014 CYIRA Note as unenforceable because (a) there was no consideration to HCP since the proceeds of the 06052014 CYIRA Note went instead to Relevant Compounding, and/or (b) any unpaid balance thereunder was consolidated into the 04302015 CYIRA Note, and requests it be disallowed to that extent.

63.     The Trustee objects to the Yerington IRA Claims to the extent based on 04302015 CYIRA Note due to Defendant Yerington's failure to establish the validity and extent of any claim arising therefrom, and requests the Yerington IRA Claims be disallowed to that extent.

64.     The Trustee objects to the Yerington IRA Claims to the extent based on the 06052014 CYIRA Note and/or the 04302015 CYIRA Note inasmuch as those Notes constitute illegal securities which are unenforceable against HCP, and requests the Yerington IRA Claims be disallowed to that extent.

65.     The Trustee objects to the Yerington IRA Claims pursuant to section 502(d) of the Bankruptcy Code since as set forth herein property is recoverable from Defendant Yerington and/or the Yerington SDIRAs under section 550 of the Bankruptcy Code and Defendant Yerington and/or the Yerington SDIRAs is a transferee of a transfer that is avoidable under sections 544 and 548 of the Bankruptcy Code and Defendant Yerington and/or the Yerington SDIRAs has not paid the amount for which Defendant Yerington and/or the Yerington SDIRAs is liable under section 550 of the Bankruptcy Code, and requests the Yerington IRA Claims be disallowed to that extent.

## COUNT V

### SUBORDINATION, EQUITABLE SUBORDINATION
### AND DISGORGEMENT OF THE PAYMENTS
### (11 U.S.C. § 510(b) and (c))

66.     The Trustee incorporates by reference the paragraphs 1 through 65 as if fully restated herein.

67.     As an insider and otherwise, Defendant Yerington knew or should have known at all relevant times that HCP was undercapitalized and insolvent.

68.     As an insider and otherwise, Defendant Yerington knew or should have known at all relevant times that HCP received no or inadequate consideration in exchange for the Notes.

69.     Notwithstanding his knowledge as aforesaid, Defendant Yerington advanced funds to HCP both directly and through Defendant Meyers and the Defendant SDIRAs on terms that were overreaching and afforded them an unfair advantage over other creditors of HCP.

70.     Further, and again notwithstanding his knowledge as aforesaid, Defendant Yerington actively and aggressively solicited and procured third-party investors in HCP, raising a significant amount of HCP's indebtedness under the Notes. Indeed, together with Defendant Meyers, he frequently served as a conduit for those investors, including their own family members. Defendants Yerington and Meyers were well aware that the proceeds of loans obtained in the name of HCP were instead being directed to HCP's affiliates and other related entities, such as Buckeye Specialty, Relevant Compounding and Waverly Metals.

71.     Defendant Yerington knew or should have known that the Notes issued by HCP were in violation of federal securities law and were therefore illegal securities.

72.     Defendant Yerington and Defendant Meyers used their status as insiders of HCP to obtain payments on their Notes to the prejudice of other creditors of HCP.

73.     The Meyers Claims, the Yerington Claims, the Meyers IRA Claims and the Yerington Claims, to the extent allowed, are for damages arising from the purchase of the Notes, which are "securities" as defined in section 101(49) of the Bankruptcy Code.

74.     Pursuant to 11 U.S.C. § 510(b) and (c), the Trustee is entitled to a judgment against the Defendants: (a) for purposes of distribution under the Bankruptcy Code, subordinating the Defendants' allowed claims for damages arising from the purchase of the Notes to all claims that are senior or equal to the Defendants' claims represented by such Notes, (b) under principals of equitable subordination, subordinating for purposes of distribution all of Defendants' allowed claims to all allowed claims arising other than from the Notes, (c) ordering that any lien securing such subordinated claims be transferred to the Debtor's estate, and (d) ordering the Defendants

23

disgorge an amount to be proven at trial, but believed to be no less than $523,253.12, which is the total amount of the Payments, or the value thereof, made by the Debtor to the Defendants.

75.    Equitable subordination of the Defendants' liens, claims and encumbrances as described herein is not inconsistent with the Bankruptcy Code.

## COUNT VI

### AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT TRANSFERS
### (11 U.S.C. § 544(a) and (b)(1), 11 U.S.C. § 548(a)(1)(A), O.R.C. § 1336.04(A)(1), 11 U.S.C. §§ 550(a), and 11 U.S.C. § 551)

76.    The Trustee incorporates by reference the paragraphs 1 through 75 as if fully restated herein.

77.    HCP made the Payments to Defendant Meyers and the other Defendants either on account of the Notes issued to the Defendants or otherwise, and incurred obligations under the Notes or otherwise (collectively, the "Obligations").

78.    The Payments were each transfers of an interest of the Debtor in property.

79.    At the time of each Payment the Debtor was insolvent, undercapitalized, unable to pay its debts as they came due and operating as a fraudulent Ponzi scheme.

80.    The Debtor made each Payment with the actual intent to hinder, delay, or defraud one or more creditors of the Debtor.

81.    The Debtor intended each Payment to further the Ponzi scheme.

82.    A creditor exists who would be entitled to avoid the Payments under the Ohio Uniform Fraudulent Transfer Act, including Hadsell and the numerous other holders of Notes identified in the Debtor's schedules. Upon information and belief, each of these creditors was, and is, owed by the Debtor as of the date of each Payment, as of the Petition Date, as of the date of this Complaint and at all other times potentially relevant to this Complaint.

83.    Pursuant to 11 U.S.C. § 544(a) and (b)(1), 11 U.S.C. § 548(a)(1)(A), O.R.C. § 1336.04(A)(1), 11 U.S.C. § 550(a)(1) or (2) and 11 U.S.C. § 551, the Trustee is entitled to a judgment against the Defendants: (a) avoiding and preserving the Payments for the benefit of the bankruptcy estate, avoiding any Obligations of the Debtor to the Defendants, and avoiding any liens of the Defendants, (b) directing that the Payments be set aside, and (c) recovering from the Defendants an amount to be proven at trial, but believed to be no less than $523,253.12, which is the total amount of the Payments, or the value thereof, made by the Debtor to the Defendants.

## COUNT VII

**AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFERS
(11 U.S.C. § 544(a) and (b)(1), 11 U.S.C. § 548(a)(1)(B), O.R.C. § 1336.04(A)(2),
11 U.S.C. § 550(a), and 11 U.S.C. § 551)**

84.    The Trustee incorporates by reference the paragraphs 1 through 83 as if fully restated herein.

85.    HCP made the Payments to Defendant Meyers and the other Defendants either on account of the Notes issued to the Defendants or otherwise, and incurred the Obligations.

86.    The Payments were each transfers of an interest of the Debtor in property.

87.    HCP received less than reasonably equivalent value in exchange for the Payments and the Obligations.

88.    At the time of each Payment and on the date the Obligations were incurred, the Debtor was insolvent, undercapitalized, unable to pay its debts as they came due and operating as a fraudulent Ponzi scheme.

89.    At the time of each Payment and on the date the Obligations were incurred, the Debtor (i) was engaged or was about to be engaged in a "business" or transaction for which the Debtor's remaining assets were unreasonably small in relation to the Debtor's business or

transaction, or (ii) intended to incur or believed or reasonably should have believed that it would

incur debts beyond the Debtor's ability to pay as such debts became due.

90.     A creditor exists who would be entitled to avoid the Payments under the Ohio

Uniform Fraudulent Transfer Act, including Hadsell and the numerous other holders of Notes

identified in the Debtor's schedules. Upon information and belief, each of these creditors was, and

is, owed by the Debtor as of the date of each Payment, as of the Petition Date, as of the date of this

Complaint and at all other times potentially relevant to this Complaint.

91.     Pursuant to 11 U.S.C. § 544(a) and (b)(1), 11 U.S.C. § 548(a)(1)(B), O.R.C. §

1336.04(A)(2), 11 U.S.C. § 550(a)(1) or (2) and 11 U.S.C. § 551, the Trustee is entitled to a

judgment against the Defendants: (a) avoiding and preserving the Payments for the benefit of the

bankruptcy estate, avoiding any Obligations of the Debtor to the Defendants, and avoiding any

liens of the Defendants, (b) directing that the Payments be set aside, and (c) recovering from the

Defendants an amount to be proven at trial, but believed to be no less than $523,253.12, which is

the total amount of the Payments, or the value thereof.

## COUNT VIII

### AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFER
### (11 U.S.C. § 547(b), 11 U.S.C. § 550(a), and 11 U.S.C. § 551)

92.     The Trustee incorporates by reference the paragraphs 1 through 91 as if fully

restated herein.

93.     On or about December 5, 2016, which is within the one year period prior to the

Petition Date, Glow Industries was served with a garnishment order obtained by Defendant

Yerington and Defendant Meyers in the State Court Action (the "Garnishment").

94.     On about March 15, 2017, which is within the one year prior to the Petition Date,

Glow Industries remitted $38,858.24 to the Clerk of Courts in connection with the Garnishment.

95.     On or about April 11, 2017, which is within the ninety-day period prior to the Petition Date, Defendant Meyers and Defendant Yerington received a transfer in the amount of $38,858.24 (the "Transfer") through the Garnishment in the State Court Action.

96.     The Transfer was of an interest of the Debtor in property inasmuch as it represents proceeds from an account receivable due HCP from Glow Industries.

97.     The Transfer was to or for the benefit of Defendant Meyers and Defendant Yerington as creditors.

98.     The Transfer was made for or on account of an antecedent debt owed by the Debtor before such Transfer was made.[7]

99.     The Transfer was made while the Debtor was insolvent.

100.    The Transfer enabled Defendant Meyers and Defendant Yerington to receive more than Defendant Meyers and Defendant Yerington would receive in this chapter 7 case, if the Transfer had not been made and if Defendant Meyers and Defendant Yerington had received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

101.    Pursuant to 11 U.S.C. § 547(b), 11 U.S.C. § 550(a)(1) or (2) and 11 U.S.C. § 551, the Trustee is entitled to a judgment against the Defendant Meyers and Defendant Yerington: (a) avoiding and preserving the Transfer for the benefit of the bankruptcy estate, (b) directing that the Transfer be set aside, and (c) recovering from the Defendants an amount to be proven at trial, but believed to be no less than $38,858.24, which is the total amount of the Transfer, or the value thereof.

---

[7] The Trustee reserves the right to amend this Count VIII to assert a fraudulent conveyance claim against Defendant Meyers and Defendant Yerington with respect to the Transfer should the Court disallow the Claims in full.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of

the Trustee and against Defendants Yerington, Meyers and the SDIRAs, as applicable, as follows:

(i)     On Count I, pursuant to 11 U.S.C. § 502(d), disallowing all filed or scheduled claims, if any, of Defendant Meyers against the Debtor and the Debtor's bankruptcy estate;

(ii)    On Count II, pursuant to 11 U.S.C. § 502(d), disallowing all filed or scheduled claims, if any, of Defendant Yerington against the Debtor and the Debtor's bankruptcy estate;

(iii)   On Count III, pursuant to 11 U.S.C. § 502(d), disallowing all filed or scheduled claims, if any, of the Meyers SDIRAs against the Debtor and the Debtor's bankruptcy estate;

(iv)    On Count IV, pursuant to 11 U.S.C. § 502(d), disallowing all filed or scheduled claims, if any, of the Yerington SDIRAs against the Debtor and the Debtor's bankruptcy estate;

(v)     On Count V, pursuant to 11 U.S.C. § 510(b) and (c), judgment against all Defendants: (a) for purposes of distribution under the Bankruptcy Code, subordinating the Defendants' allowed claims for damages arising from the purchase of the Notes to all claims that are senior or equal to the Defendants' claims represented by such Notes, (b) under principals of equitable subordination, subordinating for purposes of distribution all of Defendants' allowed claims to all allowed claims arising other than from the Notes, (c) ordering that any lien securing such subordinated claims be transferred to the Debtor's estate, and (d) ordering the Defendants to disgorge an amount to be proven at trial, but believed to be no less than $523,253.12, which is the total amount of the Payments, or the value thereof, made by the Debtor to the Defendants;

(vi)    On Count VI, pursuant to 11 U.S.C. § 544(a) and (b)(1), 11 U.S.C. § 548(a)(1)(A), O.R.C. § 1336.04(A)(1), 11 U.S.C. § 550(a)(1) or (2) and 11 U.S.C. § 551, judgment against all Defendants: (a) avoiding and preserving the Payments for the benefit of the bankruptcy estate, avoiding any Obligations of the Debtor to the Defendants, and avoiding any liens of the Defendants, (b) directing that the Payments be set aside, and (c) an amount to be proven at trial, but believed to be no less than $523,253.12, which is the total amount of the Payments, or the value thereof, made by the Debtor to the Defendants;

(vii)   On Count VII, pursuant to 11 U.S.C. § 544(a) and (b)(1), 11 U.S.C. § 548(a)(1)(B), O.R.C. § 1336.04(A)(2), 11 U.S.C. § 550(a)(1) or (2) and 11 U.S.C. § 551, judgment against all Defendants: (a) avoiding and preserving the Payments for the benefit of the bankruptcy estate, avoiding any Obligations of the Debtor to the

Defendants, and avoiding any liens of the Defendants, (b) directing that the Payments be set aside, and (c) an amount to be proven at trial, but believed to be no less than $523,253.12, which is the total amount of the Payments, or the value thereof;

(viii)   On Count VIII, pursuant to 11 U.S.C. § 547(b), 11 U.S.C. § 550(a)(1) or (2) and 11 U.S.C. § 551, the Trustee is entitled to a judgment against the Defendant Meyers and Defendant Yerington: (a) avoiding and preserving the Transfer for the benefit of the bankruptcy estate, (b) directing that the Transfer be set aside, and (c) recovering from the Defendants an amount to be proven at trial, but believed to be no less than $38,858.24, which is the total amount of the Transfer, or the value thereof;

(ix)   On all Counts, pursuant to federal common law and applicable Ohio law, (a) judgment against the Defendants awarding the Trustee prejudgment interest from the date on which any of the Payments and the Transfer were received by the Defendants, as applicable;

(x)   On all Counts, judgment establishing of a constructive trust over the proceeds of the Payments and the Transfer in favor of the Trustee for the benefit of the Debtor's bankruptcy estate; and

(xi)   Awarding the Trustee all applicable interest, costs, attorneys' fees and disbursements of this action.

Dated: February 16, 2018                    Respectfully submitted,

/s/ Jeffrey M. Levinson
Jeffrey M. Levinson (0046746)
Beth M. Miller (0072747)
Levinson LLP
55 Public Square, Suite 1750
Cleveland, OH 44113
Telephone: (216) 514-4936
Fax: (216) 532-2212
jml@jml-legal.com
bethmiller@jml-legal.com

*Attorneys for Susan L. Rhiel, Chapter 7 Trustee*

## NOTICE OF OBJECTION TO CLAIM

Susan L. Rhiel (the "Trustee"), the trustee herein, has filed the foregoing Complaint and Objection to your claim in this bankruptcy case.

**Your claim may be reduced, modified, or eliminated.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the court to reduce, modify or eliminate your claim, then on or before **thirty (30) days from the date set forth in the certificate of service for the summons issued on the Complaint and Objection to Claim**, you must file with the court a response explaining your position by mailing your response by ordinary U.S. Mail to U.S. Bankruptcy Court Clerk, Southern District of Ohio, 170 North High Street, Columbus, Ohio 43215 OR your attorney must file a response using the court's ECF System.

The court must **receive** your response on or before the above date.

You must also send a copy of your response either by 1) the court's ECF System or by 2) ordinary U.S. Mail to Counsel for the Trustee, Jeffrey M. Levinson, Levinson LLP, 55 Public Square, Suite 1750, Cleveland, Ohio 44113.

If you or your attorney do not take these steps, the court may decide that you do not oppose the objection to claim and may enter an order reducing, modifying, or eliminating your claim without further notice or hearing.