## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 17-52717 |
| | : | |
| Hadsell Chemical Processing, LLC, | : | Chapter 7 |
| | : | |
| | : | Judge John E. Hoffman, Jr. |
| | : | |
| Debtor. | : | |

**MOTION OF SUSAN L. RHIEL, TRUSTEE, FOR AUTHORTIY TO COMPROMISE CLAIMS AGAINST MULTIPLE PARTIES (MILAN HERCEG, MICHAEL RAMICONE, BRIAN SPIRES, CHRISTIAN BONASSO, CHRISTINA BRITTON, JONATHAN EATON AND CHRISTINE EATON) FOR AVOIDABLE FRAUDULENT TRANSFERS**

Now Comes Susan L. Rhiel, Chapter 7 Trustee (the "Trustee"), for the bankruptcy estate of Hadsell Chemical Processing, LLC ("Hadsell" or the "Debtor"), and hereby moves the Court pursuant to Rule 9019(a) of the Rules of Bankruptcy Procedure and Local Bankruptcy Rule 9013 for an order authorizing and approving the compromise the estate's claims against the following individuals as set forth in the related adversary proceedings: (1) Milan Herceg ("Herceg"), *Rhiel v. Herceg,* Adv. Pro. No. 19-02032 (the "Herceg Adversary"); (2) Michael Ramicone ("Ramicone"), *Rhiel v. Ramicone,* Adv. Pro. No. 19-02033 (the "Ramicone Adversary"); (3) Brian Spires ("Spires"), *Rhiel v. Spires*, Adv. Pro. No. 19-02035 (the "Spires Adversary"); (4) Christina Britton ("Britton"), *Rhiel v. Britton,* Adv. Pro. No. 19-02037 (the "Britton Adversary")[1]; (5) Christian Bonasso ("Bonasso"), *Rhiel v. Bonasso, et al.,* Adv. Pro. No. 19-02038 (the "Bonasso Adversary")[2]; and (6) Jonathan Eaton and Christine Easton ("Ms. Eaton",

---

[1] The Britton Adversary was filed against Britton as well as AdvantaIRA Trust, LLC, which was a company holding retirement funds for the benefit of Britton. The Trustee's proposed compromise with Britton will resolve claims against the retirement holding company as well.

[2] The Bonasso Adversary was filed against Bonasso as well as AdvantaIRA Trust, LLC, which was a company holding retirement funds for the benefit of Bonasso. The Trustee's proposed compromise with Bonasso will resolve claims against the retirement holding company as well.

collectively the "Eatons"), *Rhiel v. Eaton, et al.,* Adv. Pro. No. 19-02052 (the "Eaton Adversary"). All of the claims set forth in the above-referenced adversary proceedings (collectively the "Adversary Proceedings") will be resolved as a part of the proposed compromise. A memorandum in support follows.

Respectfully submitted,

**THE LAW OFFICE OF BETH M. MILLER, LLC**

*/s/ Beth M. Miller*
_____
Beth M. Miller (0072747)
81 Mill Street, Suite 300
Gahanna, OH 43230
Telephone: (614) 221-4670
miller@bmillerlawoffice.com
*Attorney for Plaintiff Chapter 7 Trustee*

<u>**MEMORANDUM IN SUPPORT**</u>

## I. INTRODUCTION

Through this motion, the Trustee seeks authority to compromise all alleged claims against Herceg, Ramicone, Spires, Britton, Bonasso and the Eatons (collectively, the "Settling Parties") that are stated in the Adversary Proceedings. Those alleged claims center on the Settling Parties' receipt of payments from Hadsell during its operation of a Ponzi scheme. Upon the filing of the Adversary Proceedings, the Trustee, through counsel[3], engaged in meaningful discussions with counsel for the Settling Parties which resulted in both sides to the litigation having useful information about the claims and defenses that would be raised. As set forth below, the parties analyzed the case and determined that each of them would be best served by settling this matter. The Trustee's justifications for the compromise are set forth below.

---

[3] The firm Allen Stovall Neuman Fisher & Ashton LLP ("ASNFA") was employed as special counsel for prosecution of the adversary proceedings on March 27, 2018 [Doc. #119]. Undersigned counsel and The Law Office of Beth M Miller, LLC was employed as general counsel for the estate on March 7, 2018 [Doc. #114]. The majority of the settlement discussions were handled by ASNFA.

Ultimately, the settlements will provide funds to the bankruptcy estate and the information provided by the Settling Parties will assist with the ongoing litigation related to Hadsell's Ponzi scheme.

Under the terms of the settlement, each of the Settling Parties have agreed to pay the proposed settlement amounts set forth below in exchange for the Trustee dismissing the adversary proceedings pending against such Settling Party following approval by this Court of the settlement and receipt in full of the settlement amount from each Settling Party.

## II.    BACKGROUND[4]

### A.    Overview of the Hadsell Ponzi Scheme

1.      The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 28, 2017.

2.      Susan L. Rhiel is the duly appointed Chapter 7 Trustee for the Debtor.

3.      Hadsell is a company that was located in Waverly, Ohio. It was formed as a tolling, mixing, processing and packaging business for chemical companies. Hadsell also attempted to expand into start-up businesses that created pharmaceutical-laced topical ointments.

4.      The Trustee's investigation of Hadsell has shown that the company was never truly operated profitably nor was it viable. Hadsell was generating massive losses within a year of its formation in 2011, and its liabilities substantially exceeded its assets during its existence.

---

[4] Additional information about this matter is detailed in the *Complaints* filed against: (1) Herceg (the "Herceg Complaint") in the Herceg Adversary [AP Doc. #1]; (2) Ramicone (the "Ramicone Complaint") in the Ramicone Adversary [AP Doc. #1]; (3) Spires (the "Spires Complaint") in the Spires Adversary [AP Doc. #1]; (4) Britton (the "Britton Complaint") in the Britton Adversary [AP Doc. #1]; (5) Bonassao (the "Bonasso Complaint") in the Bonasso Adversary [AP Doc. #1]; and (6) the Eatons (the "Eaton Complaint") in the Eaton Adversary [AP Doc. #1].

5.      The financial records of the Debtor reflect that the Debtor's operations (such records were limited), were not sustained by revenue, but instead were only sustained through periodic financial infusions from investors.

6.      Between 2012 and 2015, Hadsell's insiders worked to raise approximately $12 million through the offer and sale of promissory notes to sixty-five different investors. The offering and sales of those promissory notes were not registered with the Securities and Exchange Commission, and the circumstances regarding those notes were highly suspect.

7.      Investors - many of which were often highly-educated individuals with significant investment capital - were offered deals that were too good to be true. Generally, they were offered:

      a.      Interest rates that were substantially above market-rate, which were compounded on a monthly basis, resulting in an increased annual percentage rate;

      b.      Quick repayment terms;

      c.      Alleged personal guarantees from Don Hadsell, one of the co-owners of Hadsell (which guarantees ultimately proved to be fraudulent), and Robert Walton, another co-owner and president of Hadsell;

      d.      Security interests in all of the assets of Hadsell and its subsidiary, Relevant Compounding, LLC ("Relevant"); and

      e.      Large prepayment penalties, payments of all fees and expenses upon demand, and cognovit provisions.

8.      Although some investors conducted due diligence in relation to Hadsell and their proposed investment, as a general rule there was little to no due diligence conducted.  They came

to Hadsell, instead, through investment advisors who were selling the prospect of large, quick (and unrealistic) gains.

9.      Ultimately, despite the red flags that would have alerted a prudent investor to avoid Hadsell, there were numerous investments made, which funds were used to prop up Hadsell and the schemes of its insiders.

10.      The situation, operations, and financials of Hadsell show all of the hallmark signs of a Ponzi scheme. Over several years preceding this bankruptcy filing, Hadsell brought in new investor money for the sole and specific purpose of paying back prior debt obligations. The Trustee, in evaluating the controlling case law, believes that she can establish the facts and circumstances necessary to have the Court find that a Ponzi scheme existed.

11.      When Hadsell finally collapsed and filed its bankruptcy case, numerous creditors lost money, including the investors. Among the investors, some were repaid in full with interest, some received only partial principal in return, and some received no payments at all on their investments. Other creditors of the estate include secured creditors (some with deficiency amounts), taxing authorities, and general unsecured trade creditors. In evaluating her fiduciary duties in this case, the Trustee has been mindful of the circumstances of investors (often called the "net losers" and "net winners" based whether they received repayment of principal with interest payments), but is also focused on those creditors that recovered nothing at all.

12.      With all creditors in mind, the Trustee filed the Adversary Proceedings in conjunction with other similar proceedings, seeking to recover Ponzi Scheme payments as fraudulent transfers so as to benefit all creditors through recovery and pro rata distribution.

**B.** **Settlements**

After the filing of the Adversary Proceedings, counsel for the parties discussed the circumstances of each of the Settling Party's involvement as an investor in Hadsell, their sophistication as an investor, the possible defenses to the Trustee's action, and the overall information that each Settling Party knew about Hadsell and its insiders. It was determined between the parties that each would benefit from a resolution to the Adversary Proceedings without the parties expending additional fees and costs in continued litigation.

**1.** **Claims against Herceg and Proposed Herceg Compromise**

13. The specifics of the Trustee's claims against Herceg are set forth in the Herceg Complaint, but will be summarized here.

14. Herceg invested a total of $300,000.00 in Hadsell and was provided with two promissory notes from Hadsell, one in the amount of $200,000.00 dated February 28, 2015 and another for $100,000.00 dated April 30, 2015 (collectively the "Herceg Notes"). The Herceg Notes had the typical terms offered to investors that are described above and had an effective annual interest rate of 20.40%. Herceg was further provided a security interest in virtually all of the Debtor's assets and received an alleged guaranty from Don Hadsell.

15. The Trustee alleges that at the time of Herceg's investment, Hadsell was deep into the Ponzi scheme and appears to have used the funds to repay prior debt obligations.

16. Hadsell ceased operations before Herceg was paid the principal in full. As such, he was not a net winner, but neither did he lose all of his investment. Herceg received $21,273.81 in total from Hadsell between May 6, 2015 and September 2, 2015.

17. Herceg filed a proof of claim, Claim No. 33, in the amount of $300,000.00 against Hadsell (the "Herceg Claim").

18.    The Trustee and Herceg have entered into a settlement agreement which is contingent on the Court's approval of this motion (the "Proposed Herceg Settlement"). A copy of the proposed settlement agreement is attached as **Exhibit A**.

19.    The material terms of the Proposed Herceg Settlement are:

a.    Herceg shall pay **$9,372.00** to the Trustee within fifteen (15) business days of the entry of an order approving this compromise;

b.    Herceg shall not file a claim related to the settlement payment. Herceg further agrees that any existing or future proof of claim filed in the Bankruptcy Estate is waived, released and withdrawn, including but not limited to the Herceg Claim; and

c.    The Trustee will dismiss the Herceg Adversary Proceeding with prejudice and release all claims against Herceg upon receipt of the settlement funds

**2.    Claims against Ramicone and Proposed Ramicone Compromise**

20.    The specifics of the Trustee's claims against Ramicone are set forth in the Ramicone Complaint, but will be summarized here.

21.    Ramicone invested a total of $375,000.00 in Hadsell and was provided with three promissory notes from Hadsell as follows: (a) a note in the amount of $200,000.00 dated February 28, 2015; (b) a note for $100,000.00 dated April 30, 2015; and (c) a note in the amount of $125,000.00 dated June 30, 2015, of which only $75,000.00 was disbursed to Hadsell on June 29, 2015 (collectively the "Ramicone Notes"). The Ramicone Notes had the typical terms offered to investors that are described above and had an effective annual interest rate of 20.40% for the first and second notes and 12.20% for the third note. Ramicone was further provided a security interest in virtually all of the Debtor's assets and received an alleged guaranty from Don Hadsell.

22.     The Trustee alleges that at the time of Ramicone's investment, Hadsell was deep into the Ponzi scheme and appears to have used the funds to repay prior debt obligations.

23.     Hadsell ceased operations before Ramicone was paid the principal amount of his investment in full. As such, he was not a net winner, but neither did he lose all of his investment. Ramicone received $18,228.49 in total from Hadsell between May 6, 2015 and September 2, 2015.

24.     Ramicone filed a proof of claim, Claim No. 32, in the amount of $425,000.00 against Hadsell (the "Ramicone Claim").

25.     The Trustee and Ramicone have entered into a settlement agreement which is contingent on the Court's approval of this motion (the "Proposed Ramicone Settlement"). A copy of the proposed settlement agreement is attached as **Exhibit B**.

26.     The material terms of the Proposed Ramicone Settlement are:

a.     Ramicone shall pay **$8,203.00** to the Trustee within fifteen (15) business days of the entry of an order approving this compromise;

b.     Ramicone shall not file a claim related to the settlement payment. Ramicone further agrees that any existing or future proof of claim filed in the Bankruptcy Estate is waived, released and withdrawn, including but not limited to the Ramicone Claim; and

c.     The Trustee will dismiss the Ramicone Adversary Proceeding with prejudice and release all claims against Ramicone upon receipt of the settlement funds.

**3.     Claims against Spires and Proposed Spires Compromise**

27.     The specifics of the Trustee's claims against Spires are set forth in the Spires Complaint, but will be summarized here.

28.     Spires invested a total of $300,000.00 in Hadsell and was provided with two promissory notes from Hadsell, one in the amount of $100,000.00 dated February 28, 2015 and another for $200,000.00 dated May 1, 2015 (collectively the "Spires Notes"). The Spires Notes had the typical terms offered to investors that are described above and had an effective annual interest rate of 20.40%. Spires was further provided a security interest in virtually all of the Debtor's assets and received an alleged guaranty from Don Hadsell.

29.     The Trustee alleges that at the time of Spires investment, Hadsell was deep into the Ponzi scheme and appears to have used the funds to repay prior debt obligations.

30.     Hadsell ceased operations before Spires was paid the principal of his investment in full. As such, he was not a net winner, but neither did he lose all of his investment. Spires received $17,991.07 in total from Hadsell between May 6, 2015 and September 2, 2015.

31.     Spires filed a proof of claim, Claim No. 40, in the amount of $300,000.00 against Hadsell (the "Spires Claim").

32.     The Trustee and Spires have entered into a settlement agreement which is contingent on the Court's approval of this motion (the "Proposed Spires Settlement"). A copy of the proposed settlement agreement is attached as **Exhibit C**.

33.     The material terms of the Proposed Spires Settlement are:

a.   Spires will pay **$8,095.00** to the Trustee within fifteen (15) business days of the entry of an order approving this compromise;

b.   Spires shall not file a claim related to the settlement payment. Spires further agrees that any existing or future proof of claim filed in the Bankruptcy Estate is waived, released and withdrawn, including but not limited to the Spires Claim; and

     c.   The Trustee will dismiss the Spires Adversary Proceeding with prejudice and release all claims against Spires upon receipt of the settlement funds.

### 4.    Claims against Britton and Proposed Britton Compromise

34.    The specifics of the Trustee's claims against Britton are set forth in the Britton Complaint, but will be summarized here.

35.    Britton invested $300,000.00 in Hadsell and was provided with two promissory notes from Hadsell, one in the amount of $50,000.00 dated April 30, 2015 and another for $250,000.00 dated June 30 2015 (collectively the "Britton Notes"). The Britton Notes had the typical terms offered to investors that are described above and had an effective annual interest rate of 20.40% and 12.23% respectively. Upon information and belief, Hadsell and Britton entered into a third note in the amount of $200,000.00 dated February 28, 2015 and Hadsell and AdvantaIRA Trust, LLC in its capacity for the benefit of Britton ("Britton Advanta"), entered into a note in the amount of $200,000.00 dated February 28, 2015. As such, Britton and Britton Advanta invested an estimated total of $700,000.00 in Hadsell. Britton was further provided a security interest in virtually all of the Debtor's assets and received an alleged guaranty from Don Hadsell.

36.    The Trustee alleges that at the time of Britton's investment, Hadsell was deep into the Ponzi scheme and appears to have used the funds to repay prior debt obligations.

37.    Hadsell ceased operations before Britton and Britton Advanta were paid the principal amount of the investments in full. As such, Britton was not a net winner, but neither did she lose all of her investment. Britton and Britton Advanta received $40,097.72 in from Hadsell between May 6, 2015 and September 2, 2015.

38.     Britton filed a proof of claim, Claim No. 31, in the amount of $300,000.00 against Hadsell (the "Britton Claim").

39.     The Trustee and Britton have entered into a settlement agreement which is contingent on the Court's approval of this motion (the "Proposed Britton Settlement"). A copy of the proposed settlement agreement is attached as **Exhibit D**.

40.     The material terms of the Proposed Britton Settlement are:

    a.  Britton shall pay **$12,030.00** to the Trustee within fifteen (15) business days of the entry of an order approving this compromise;

    b.  Britton shall not file a claim related to the settlement payment. Britton agrees that any existing or future proof of claim filed in the Bankruptcy Estate is waived, released and withdrawn, including but not limited to the Britton Claim; and

    c.  The Trustee will dismiss the Britton Adversary Proceeding with prejudice and release all claims against Britton and Britton Advanta upon receipt of the settlement funds.

**5.      Claims against Bonasso and Proposed Bonasso Compromise**

41.     The specifics of the Trustee's claims against Bonasso are set forth in the Bonasso Complaint, but will be summarized here.

42.     Bonasso invested estimated $1,600,000.00 in Hadsell and was provided with four promissory notes from Hadsell: (a) a $500,000.00 note dated February 2, 2015; (b) a $300,000.00 note dated February 28, 2015; (c) a $550,000.00 note dated June 2, 2015; and (d) a $250,000.00 note dated June 30, 2015 (collectively the "Bonasso Notes"). The Bonasso Notes had the typical terms offered to investors that are described above and had effective annual

interest rates of 40.00%, 20.40%, 20.40% and 12.23% respectively. Upon information and belief, Hadsell and AdvantaIRA Trust in the capacity for the benefit of Bonasso ("Bonasso Advanta") entered into a note in the amount of $200,000.00 dated February 28, 2015. As such, Bonasso and Bonasso Advanta invested an estimated total of $1,800,000.00 in Hadsell. Bonasso was further provided a security interest in virtually all of the Debtor's assets and received an alleged guaranty from Don Hadsell.

43.    The Trustee alleges that at the time of Bonasso investment, Hadsell was deep into the Ponzi scheme and appears to have used the funds to repay prior debt obligations.

44.    Hadsell ceased operations before Bonasso and Bonasso Advanta were paid the principal amount of the investments in full. As such, he was not a net winner, but neither did he lose all of his investment. Bonasso and Bonasso Advanta received $65,434.91 in total from Hadsell between May 6, 2015 and September 2, 2015.

45.    Bonasso filed a proof of claim, Claim No. 34, in the amount of $1,150,000.00 against Hadsell (the "Bonasso Claim").

46.    The Trustee and Bonasso have entered into a settlement agreement which is contingent on the Court's approval of this motion (the "Proposed Bonasso Settlement"). A copy of the proposed settlement agreement is attached as **Exhibit E**.

47.    The material terms of the Proposed Bonasso Settlement are:

a.    Bonasso shall pay **$29,445.00** to the Trustee within fifteen (15) business days of the entry of an order approving this compromise;

b.    Bonasso shall not file a claim related to the settlement payment. Bonasso further agrees that any existing or future proof of claim filed in the

Bankruptcy Estate is waived, released and withdrawn, including but not limited to the Bonasso Claim; and

c.  The Trustee will dismiss the Bonasso Adversary Proceeding with prejudice and release all claims against Bonasso and Bonasso Advanta upon receipt of the settlement funds.

### 6.    Claims against the Eatons and Proposed Eaton Compromise

48.    The specifics of the Trustee's claims against the Eatons are set forth in the Eatons Complaint, but will be summarized here.

49.    The Trustee alleged in the Eaton Complaint that the Eatons invested $50,000.00 in Hadsell and was provided a promissory note from Hadsell in the amount of $50,000 dated April 23, 2013 (the "Eaton Note"), which had the typical terms offered to investors that are described above and had an effective annual interest rate of 48.00%. The Trustee further alleged that upon information and belief, additional loans were made to Hadsell under other promissory notes, with the total amount of all loans being in excess of $240,000.00.

50.    During settlement discussions with the Eatons' counsel and upon further investigation, the Trustee confirmed that Ms. Eaton invested only $50,000.00 in Hadsell as evidenced by the Eaton Note and that Mr. Eaton did not make any investments in Hadsell.

51.    The Trustee alleges that at the time of Ms. Eaton's investment, Hadsell was into the Ponzi scheme and appears that it may have used the funds to repay prior debt obligations.

52.    Ms. Eaton received two payments in 2013 in the total amount of $56,500.00, thereby satisfying the full principal amount of the Eaton Note, as well as paying Ms. Eaton interest or an incentive of $6,500.00.  As such, Ms. Eaton was a net winner.

53.    The Trustee and Ms. Eaton have entered into a settlement agreement which is contingent on the Court's approval of this motion (the "Proposed Eaton Settlement"). A copy of the proposed settlement agreement is attached as **Exhibit F**.

54.    The material terms of the Proposed Spires Settlement are:

a.    Ms. Eaton shall pay a total of **$6,500.00** to the Trustee (the "Settlement Amount") as follows: (i) an initial payment of $2,500.00 within five (5) business days of the entry of an order approving this compromise; (ii) a second payment of $2,000.00 within thirty (30) calendar days of the entry of an order approving this compromise; and (iii) a third payment of $2,000.00 within sixty (60) calendar days of the entry of an order approving this compromise (collectively, the "Settlement Payments");

b.    Ms. Eaton shall not file a claim related to the Settlement Payments. Ms. Eaton further agrees that any existing or future proof of claim filed in the Bankruptcy Estate is waived, released and withdrawn; and

c.    The Trustee will dismiss the Eaton Adversary Proceeding with prejudice and release all claims against the Eatons upon receipt of the entire Settlement Amount.

### 7.    As to All Proposed Settlements

55.    The Trustee further seeks authorization to execute any documents necessary to consummate the compromises with the Settling Parties.

56.    The Trustee believes in her business judgment that the Proposed Herceg Settlement, Proposed Ramicone Settlement, Proposed Spires Settlement, Proposed Britton Settlement, Proposed Bonasso Settlement and Proposed Eaton Settlement (collectively, the

"Proposed Settlements") are in the best interest of the bankruptcy estate, and she seeks approval

of the same by this Court.

## III.   LEGAL DISCUSSION

### A.   Standard to be applied by the Court

Rule 9019(a) of the Rules of Bankruptcy Procedure authorizes a bankruptcy court to

approve compromises or settlements:

> On motion by the trustee and after notice and a hearing, the court
> may approve a compromise or settlement. Notice shall be given to
> creditors, the United States Trustee, the debtor, and indenture
> trustees as provided in Rule 2002 and to any other entity as the
> court may direct.

Fed. R. Bankr. P. 9019(a). This rule affords the Court broad authority to consider and to approve

compromises and settlements. *See In re Goldstein*, 131 B.R. 367 (Bankr. S.D. Ohio 1991). Prior

to approving a compromise, the Court must determine that the proposed settlement is in the best

interests of the debtor's estate. *In re Lee Way Holding, Co*., 120 B.R. 881, 890 (Bankr. S.D. Ohio

1990) ("The benchmark for determining the propriety of a bankruptcy settlement is whether the

settlement is in the best interests of the estate.").

Ultimately, the decision to approve a compromise lies within the discretion of the

bankruptcy court. *In re SIS Corp*., 108 B.R. 608, 612 (Bankr. N.D. Ohio 1989). The Court's

analysis of a compromise should be flexible and take into account all circumstances of the

particular controversy. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3rd Cir. 1996). The

Court should also note that it "is well established that compromises are favored in bankruptcy."

*Lee Way*, 120 B.R. at 891.

Under Rule 9019, the Court should consider the following factors when deliberating over

the approval or disapproval of a proposed settlement:

(1)    The probability of success in the litigation to be settled;

(2)    The difficulties, if any, to be encountered in collecting a judgment if the estate prevails in litigation;

(3)    The complexity of the litigation involved, including the expense, inconvenience and delay attendant to further proceedings; and

(4)    The paramount interests of the creditors, with appropriate deference to their reasonable views.

*See In re Goldstein*, 131 B.R. at 369-70; *see also In re Bell & Beckwith*, 93 B.R. 569, 574 (Bankr. N.D. Ohio 1989); *In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987).

Settlements and compromises should be rejected only if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2nd Cir. 1983). The settlement need not be the best that the Trustee could have possibly achieved, but must only fall "within the reasonable range of litigation possibilities." *In re Penn Central Transp.* Co., 596 F.2d 1102, 1114 (3rd Cir. 1979). In making its determination, a court should not substitute its own judgment for that of the trustee, *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986), nor is it necessary for a court to conduct a full evidentiary hearing or "mini trial" on the facts underlying the dispute. *In re A & C Properties*, 784 F.2d 1377, 1384 (9th Cir. 1986). Rather, a court need only consider those facts that are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. *In re Energy Co-operative, Inc.*, 886 F.2d 921, 924 (7th Cir. 1989). *See also, In re Nicole Energy Services, Inc.*, 385 B.R. 201, 237-239 (Bankr. S.D. Ohio 2008). As the Sixth Circuit has instructed, courts must evaluate the "fairness and equity" of a proposed compromise. *Id.* at 238 (other citations omitted). "A court may consider the objections of other creditors or parties in interest, but the objections are "not controlling and will not prevent approval by the Court." *Id.* at 239 (citation omitted).

The Bankruptcy Court's responsibility "is not to decide the numerous questions of law and fact raised by [the objecting party] but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re Boddie*. 569 B.R. at 303. (internal quotation marks and citations omitted). Though the Court must make an "informed and independent" decision whether the compromise is fair and equitable, the Court "is not to substitute [its] judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." *Id*. The Court also "must consider the principle that law favors compromise." *Id.* (citing *In re Goldstein*, 131 B.R. at 370).

### B.    Application of the standard to this case

### i.    Probability of success in the litigation

In reviewing the reasonableness of the Proposed Settlements, this Court must first look at the probability of success on the merits of the litigation. *In re Boddie*. 569 B.R. at 302-303. In this instance, the Trustee believes that - were cost not a factor - she could be successful in prosecuting the Adversary Proceedings and obtaining a judgment against the Settling Parties for certain portions of the alleged fraudulent transfers. Based on the research that the Trustee has conducted (both as to the case law and the facts of this case), the Trustee believes she would be able to prove that Hadsell operated a Ponzi scheme. Upon the Court finding that Hadsell operated a Ponzi scheme, the Trustee would be entitled to a presumption that the transfers were fraudulent. *See In re Canyon Sys. Corp.*, 343 B.R. 615, 636-637 (Bankr. S.D. Ohio 2006) ("Actual intent to hinder, delay or defraud may be established as a matter of law in cases in which the debtor runs a Ponzi scheme or a similar illegitimate enterprise, because transfers made in the course of a Ponzi operation could have been made for no purpose other than to hinder,

delay or defraud creditors."); *see also In re Fair Fin. Co.*, 834 F.3d 651, 670 (6th Cir. 2016) (citing *In re Canyon Sys. Corp.,* 343 B.R. at 636-637).

Once the nature of the transfers was established as fraudulent, the real dispute within the Adversary Proceedings would turn to the issue of good faith. The Bankruptcy Code provides defenses to certain transferees if they took funds for value and in good faith. It is normally the transferee's burden to establish the good faith defense, *In re Canyon Sys. Corp.,* 343 B.R. at 650-651 (transferee's burden to prove 11 U.S.C. § 548(c) and R.C. § 1336.08(A)'s good faith defenses). If the Trustee is able to prove that the transfers made to the Settling Parties were actually fraudulent, then the Trustee can recover the entire amount transferred to the Settling Parties, including amounts that represent the return of their principal investment. See, e.g., *Donell v. Kowell*, 533 F.3d 762, 771 (9th Cir. 2008) (applying California fraudulent transfer law); *Thomas v. Othman*, 2017-Ohio-8449, ¶ 26, 99 N.E.3d 1189, 1195 (1st Dist.). If the Court deems the transfers to be constructively fraudulent, rather than actually fraudulent, then the Trustee would need to affirmatively prove a lack of good faith by the Settling Parties in order to recover returns of their principal investment. *Donell v. Kowell*, 533 F.3d at 771. The Trustee would need to establish that lack of good faith through a display of the red flags that should have alerted the Settling Parties to the problems with this investment, and the fact that this was too good to be true. *See GLC Ltd. v. Hunter Miller Family, LLC*, No. 1:15-CV-23, 2015 WL 4204111, at *4 (S.D. Ohio July 10, 2015) (the hybrid objective-subjective test for assessing a tranferee's good faith begins with a look at the "subjective intent of the transferee in light of objective factors, such as his *knowledge of the presence of 'badges of fraud' or 'red flags' that should have put him on inquiry notice*" (emphasis in original)). That is, a sophisticated investor cannot be acting in good faith in making this type of investment without conducting appropriate due diligence.

*See id.* at \*5 (Once "transferee becomes aware of facts that call into question the transferor's solvency and/or intent," a transferee is imputed with a "duty of inquiry"); *see also In re Lake States Commodities, Inc.*, 253 B.R. 866, 878 (Bankr. N.D. Ill. 2000) (listing various factors for consideration in a good faith analysis, including the transferee's sophistication).

While the Trustee believes she may prevail on some of these arguments, formal discovery has yet to be conducted and there are many factors that play into the good faith arguments. The Setting Parties have maintained and asserted in their answers that they invested in good faith. In addition, the Trustee believes that Britton and Ms. Eaton may not be deemed to be sophisticated or experienced investors. The Trustee took into account the expense of litigation and/or continued litigation of each claim, including the cost of further discovery in obtaining additional documents and performing necessary depositions, the cost of hiring an expert witness to testify regarding insolvency, the lack of benefit to Hadsell and the good faith defenses raised by the Settling Parties, and the relative amount in controversy after applying the raised defenses and the delay involved in such litigation. While the Trustee believes that she may be successful on the merits, the risks of litigation do not allow for that result to be guaranteed, making the "probability of success" factor weigh in favor of approving the Proposed Settlements.

### ii.    Difficulty of collection

The second factor typically applies when a Trustee asserts a claim against a third party, the collectability of which is speculative. The Trustee has not conducted a full analysis of the Settling Parties' collectability, but based upon the information that the Trustee has, she believes that judgments against Herceg, Ramicone, Spires, and Bonasso would be collectible, but judgment against Britton and Ms. Eaton may be more difficult to collect due to income and available assets. The Trustee does not believe that the issue of collectability is a significant

factor, except to the extent that the Trustee would be required to additional fees and expenses to collect. That being, the bankruptcy estate may have to remain open for an extended period of time in order to collect the judgments.

### iii.    Complexity, expense, and burden of litigation

The third factor that this Court must weigh in deciding whether to approve the Proposed Settlements is complexity of the litigation involved, including the expense, inconvenience, and delay attendant to further proceedings. *In re Boddie*. 569 B.R. at 302-303. This factor is the most critical in determining whether to approve the Proposed Settlements. The Trustee anticipates that the prosecution of the Adversary Proceedings would result in significant legal fees and expenses, would take a substantial amount of time for the parties involved.  Notwithstanding the foregoing, the Trustee has the benefit of pursuing multiple lawsuits of this nature with similar facts, circumstances, claims and defenses. That will allow for the Trustee to have the benefit of economies of scale on the main issues regarding Hadsell, the existence of a Ponzi scheme, and the legal authorities such that not all expenses of this matter would be solely attributable to the Settling Parties. That being said, the Trustee would need to still spend significant time on this case, specifically as to the factual allegations of the good faith defenses raised by the Settling Parties, and the legal expenses would quickly accrue. Those potential costs weighed heavily on the Trustee in accepting the Proposed Settlements.

### iv.    Interest of the Creditors

In determining the reasonableness of the settlement, this Court must also consider the paramount interests of the estate's creditors. *In re Boddie*. 569 B.R. at 302-303. Of particular importance to the Trustee is that the Proposed Settlements permit the Trustee to a cash payment, waiver of large unsecured proofs of claim that have been filed (totaling $2,475,000.00), and the

waiver of any proof of claim related to the settlement payments, all which have value to the estate. Those concessions by the Settling Parties will help to ensure that the maximum amount of funds can be distributed at the end of this case to all unsecured creditors. The creditors' interests are certainly advanced by the Adversary Proceedings being resolved in a quick manner that resulted in a limited amount of legal fees and expenses.

## IV.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an Order approving the Proposed Settlements upon the terms set forth in this Motion, and for such other and further relief as is just and proper.

Respectfully submitted,

THE LAW OFFICE OF BETH M. MILLER, LLC

*/s/ Beth M. Miller*

_____
Beth M. Miller (0072747)
81 Mill Street, Suite 300
Gahanna, OH 43230
Telephone: (614) 221-4670
miller@bmillerlawoffice.com
*Attorney for Chapter 7 Trustee*

## <u>NOTICE OF FILING OF MOTION</u>

Notice is hereby given that Susan L. Rhiel, Trustee herein, has filed the following papers with the Court: **Motion of Susan L. Rhiel, Trustee, for Authority to Compromise Claims Against Multiple Parties for Avoidable Fraudulent Transfers**

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the relief sought, or if you want the Court to consider your views thereon, then on or before twenty-one (21) days from **January 8, 2021** the date of service of this notice, you or your attorney must:

File with the Court a written request for a hearing along with a written response or an answer explaining your position. This pleading must be filed at Clerk of Courts, United States Bankruptcy Court, 170 N. High Street, Columbus, Ohio 43215. If you mail your request and response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above. The Court will send out a notice of hearing. You must also mail a copy to:

Beth M. Miller, Esq.
The Law Office of Beth M. Miller, LLC
81 Mill Street, Suite 300
Gahanna, OH 43230

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief pursuant to the provisions of Local Bankruptcy Rule 9013.

Date of Service:  **January 8, 2021**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 8th day of January, 2021, a copy of the *Motion of Susan L. Rhiel, Trustee, for Authority to Compromise Claims Against Multiple Parties for Avoidable Fraudulent Transfers* was served electronically through the Court's ECF System at the email address registered with the Court as follows:

- Rick L. Ashton     ashton@asnfa.com, schenck@asnfa.com
- Asst US Trustee (Col)     ustpregion09.cb.ecf@usdoj.gov
- Richard F Bentley     wolfbent@sbcglobal.net
- Thomas Breidenstein     tbreidenstein@stites.com
- Richard W Campbell     rickwcampbell@gmail.com, moosia88@yahoo.com
- Matthew S Casto     mcasto@babstcalland.com, jmcneely@babstcalland.com
- Andrew C. Clark     ACC@RICKETTS-LAW.COM, ALM@RICKETTS-LAW.COM
- Andrew P Cooke     acooke@cdgattorneys.com, mhicks@cdgattorneys.com
- Kyle Allan Cooper     kcooper@greenecooper.com, Acooper@greenecooper.com
- James A Coutinho     coutinho@aksnlaw.com, doan@aksnlaw.com
- James A Coutinho     coutinho@asnfa.com, doan@aksnlaw.com
- Yvette A Spires     BR-ECF@BaileyCavalieri.com
- Angela D Dodd     dodda@sec.gov
- Jennifer Fate     fate@mmmb.com, stacey@mmmb.com; hemenway@mmmb.com; hemenway@ecf.courtdrive.com
- Melissa S. Giberson     msgiberson@vorys.com, mdwalkuski@vorys.com
- Alexandra Siebler Horwitz     allie.horwitz@dinsmore.com
- Daniel J Hunter     hunter@aksnlaw.com, doan@aksnlaw.com
- John W Kennedy     jwk@columbuslawyer.net
- Sarah S Mattingly     sarah.mattingly@dinsmore.com, Teresa.rice@dinsmore.com; Kimberly.appel@dinsmore.com
- Larry J. McClatchey     lmcclatchey@keglerbrown.com, bgibson@keglerbrown.com
- Laura M Nesbitt     laura@nesbittfirm.com, nesbittfirmecf@gmail.com; r54039@notify.bestcase.com
- Gregory B O'Connor     goconnor@mcnameelaw.com, lkelley@mcnameelaw.com
- Joseph C Pickens     jpickens@taftlaw.com, khines@taftlaw.com; COL_Docket_Assist@taftlaw.com
- Clinton E Preslan     ndohbky@jbandr.com
- Kenneth M Richards     krichards@LNLattorneys.com
- Richard T Ricketts     rtr@ricketts-law.com, alm@ricketts-law.com
- Jeffrey B Sams     jsams@jeffsamslaw.com
- Neil C Sander     nsander@sanderlawgroup.com, tliddle@sanderlawgroup.com
- Cassaundra L Sark     csark@lambert-law.org, r51641@notify.bestcase.com
- Tom Shafirstein     shafirstein@asnfa.com, schenck@asnfa.com
- Richard K Stovall     stovall@asnfa.com, ashton@asnfa.com; schenck@asnfa.com
- Monica L Waller     mwaller@lanealton.com
- Matthew L Ward     matthew.ward@dinsmore.com, beth.blankenship@dinsmore.com
- David M. Whittaker     dwhittaker@isaacwiles.com
- Catherine Elizabeth Woltering     cwoltering@bakerlaw.com, lbeiser@bakerlaw.com

And was served this 8th day of January, 2021, by regular U.S. Mail, postage prepaid, upon the parties and participants listed on the attached Limited Service List, who were not otherwise served via the Court's ECF system.

*/s/ Beth M. Miller*

Beth M. Miller (0072747)

**Limited Service List:**
**Hadsell Chemical Processing**
**Case No. 17-52717**
**(12.09.2020)**

Accutek Packaging Equipment
Companies Inc.
2980 Scott Street
Vista, CA 92081-8321

Agera Energy, LLC
c/o Kyle A. Cooper, Esq.
Green & Cooper, LLP
120 Travertine Trl
Alpharetta, GA 30022

Brian Spires
5133 Springs Court
Galena, OH 43021

Christian Bonasso
2262 Yorkshire Road
Columbus, OH 43221-3762

Christina Britton
c/o Neil Sander, Esq.
2 Miranova Place, Suite 700
Columbus, OH 43215

Custer Management Inc.,
401k FBO Martha Kashner
600 Morrison Road
Gahanna, OH 43230

David Hanzel, Jr.
a/k/a David Hanzel II
655 Jo Ell Lane
Wheelersburg, OH 45694

Direct Capital Corporation
155 Commerce Way
Portsmouth, NH 03801-3243

Elizabeth M. Custer Irrev. Trust 8/30/06
c/o Charles F. Hertlein, Jr.
Dinsmore & Shohl LLP
255 E. 5th St., Ste. 1900
Cincinnati, OH 45202-1971

Hadsell Chemical Company
9329 State Rt. 220
Waverly, OH 45690-9189

AdvantaIRA Trust, LLC F.B.O.
Jacquie Sells 7330602
c/o Baker Hostetler, LLP
200 Civic Center Drive, Ste. 1200
Columbus, OH 43215-4234

Airgas USA, LLC
PO Box 802576
Chicago, IL 60680-2576

Cab East, LLC
c/o Ford Motor Credit Company,
c/o Keith D. Weiner & Assoc Co LPA
75 Public Sq., 4th Floor
Cleveland, OH 44113-2001

Christian Bonasso
c/o Neil Sander, Esq.
2 Miranova Place, Suite 700
Columbus, OH 43215

Christopher Yerington Self Directed IRA
Attn: Richard T. Ricketts
50 Hill Road South
Pickerington, OH 43147-1219

David G. Peabody
c/o Nesbitt Law Firm, LLC
5400 Frantz Road, Ste. 210
Dublin, OH 43016

Dawn M Stanislaw
4254 N Richmond St.
Chicago, IL 60618-2616

Dolores Bryant
121 Brammer Drive
Coal Grove, OH 45638-3004

FBC Chemical Corporation
PO Box 599
Mars, PA 16046-0599

Asst US Trustee (Col)
Office of the US Trustee
170 North High Street, Suite 200
Columbus, OH 43215-2417

AdvantaIRA Trust, LLC F.B.O.
Mark Sells 7330102
c/o Baker Hostetler, LLP
200 Civic Center Drive, Ste. 1200
Columbus, OH 43215-4234

Appalachian Partnership for
Economic Growth
P.O. Box 456
35 Public Square
Nelsonville, OH 45764-0456

Chris L. Yerington
c/o Ricketts Co LPA
50 Hill Road South
Pickerington, OH 43147-1219

Christina Britton
7355 Southfield
New Albany, OH 43054-8165

Custer Management Inc.,
401k FBO Christopher Henneforth
600 Morrison Road
Gahanna, OH 43230

David Hanzel
3230 Chateau Dr.
Portsmouth, OH 45662-2470

Dinsmore & Shohl LLP
255 E. 5th St., Ste. 1900
Cincinnati, OH 45202-1971

Dolores Bryant
[aka Delores Bryant]
c/o Brigham M. Anderson
408 Park Avenue
Ironton, OH 45638

FedEx Corporate Services, Inc.
FedEx Corporate Services, Inc. as Assignee
Of FedEx Express/Ground/Freight/Office
3965 Airways Blvd. Module G., 3rd Floor
Memphis, TN 38116-5017

First National Bank of Waverly
107 E. Market
Waverly, OH 45690-1354

First National Bank of Waverly
c/o Adam J. Biehl, Esq.
Bailey Cavalieri LLC
10 West Broad St. Suite 2100
Columbus, OH 43215

Foill Incorporated
201 E. North Street
Waverly, OH 45690-1149

Premier Truck Sales & Rental
[Listed as Hadsell Chemical Processing]
c/o Weltman, Weinberg & Reis Co., LPA
3705 Marlane Drive
Grove City, OH 43123-8895

Herc Rentals Inc.
Attn: Bankruptcy
27500 Riverview Center Blvd., 2nd Flr.
Bonita Springs, FL 34134-4325

Integrated Resource Recovery Inc.
1650 Borel Place, Suite 200
San Mateo, CA 94402-3536

Integrated Resource Recovery Inc.
c/o Andrew P. Cooke, Esq.
Cooke Demers, LLC
260 Market Street, Suite F
New Albany, OH 43054

Internal Revenue Service
Department of the Treasury
PO Box 7346
Philadelphia, PA 19101-7346

Interstate Gas Supply, Inc.
c/o James G. Kozelek, Esq. Weltman,
Weinberg & Reis Co., LPA
3705 Marlane Drive
Grove City, OH 43123-8895

James C. Boone
216 Rollingfield Road
Baltimore, MD 21228-4825

Jenny Chamberlin
c/o Amy Kuhlman: Newhouse,
Prophater, Kolman
3366 Riverside Drive, Suite 103
Columbus, OH 43221

John Uliveto & Associates
1724 Greendle Ave
Findlay, OH 45840-6916

Klinker's Lumber & Builder's Suppl
c/o Maria Marino Guthrie, Esq.
366 East Broad Street
Columbus, OH 43215-3819

Lori D. Meyers
c/o Ricketts Co LPA
50 Hill Road South
Pickerington, OH 43147-1219

Lori D. Meyers Self Direct IRA
Attn: Richard T. Ricketts
50 Hill Road South
Pickerington, OH 43147-1219

Mark Sells
c/o Baker Hostetler, LLP
200 Civic Center Drive, Ste. 1200
Columbus, OH 43215-4234

McMaster-Carr
200 Aurora Industrial Pkwy
Aurora, OH 44202-8090

Michael Ramicone
2863 Creekwood Estates Drive
Blacklick, OH 43004-8058

Michael Ramicone
c/o Neil Sander, Esq.
2 Miranova Place, Suite 700
Columbus, OH 43215

Milan Herceg
10152 Archer Lane
Dublin, OH 43017-7978

Milan Herceg
c/o Neil Sander, Esq.
2 Miranova Place, Suite 700
Columbus, OH 43215

Nathan Chamberlin
c/o Amy Kuhlman: Newhouse,
Prophater, Kolman
3366 Riverside Drive, Suite 103
Columbus, OH 43221

Northern Safety Co. Inc.
PO Box 4250
Utica, NY 13504-4250

Ohio Bureau of Worker's
Compensation
Attn: Law Section Bankruptcy Dept.
P.O. Box 15667
Columbus, OH 43215-0667

Ohio Dept. of Taxation
Bankruptcy Division
P.O. Box 530
Columbus, OH 43216-0530

Ohio Dept. of Job & Family Services
Attn: OUIO Tax Appeals
P.O. Box 182404
Columbus, OH 43218-2404

Ohio Dept. of Job & Family Services
Attn: Donn D. Rosenblum
P.O. Box 182404
Columbus, OH 43218-2404

R.K.J. Fabrication & Construction
201 E. North Street
Waverly, OH 45690

Reade International Corp.
850 Waterman Avenue
East Providence, RI 02914-1729

Rhonda Bame
c/o Stephen C. Rodeheffer
630 Sixth Street
Portsmouth, OH 45662-3925

Suburban Propane
PO Box 206
Whippany, NJ 07981-0206

Sunbelt Rentals, Inc.
PO Box 409211
Atlanta, GA 30384-9211

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk VA 23541-1021

The Director of Development
State of Ohio
77 S. High Street
Columbus, OH 43215-6130

The Director of Dev. Services Agency –
Director of Ohio Dept. of Development
Andrew P. Cooke, Esq./ Cook Demers, LLC
260 Market Street, Suite F
New Albany, OH 43054

Tri-State Overhead Doors
1333 Galena Pike West
West Portsmouth, OH 45663-6047

U.S. Dept of Labor, EBSA
F/B/O Hadsell Chemical Processing
SIMPLE IRA PLAN
1885 Dixie Highway, Ste. 210
Ft Wright, KY 41011-2697

United Parcel Service (Domestic)
c/o RMS
P.O. Box 19253
Minneapolis, MN 55419

William M. Custer Self-Directed Rollover
IRA c/o Charles F. Hertlein, Jr.
Dinsmore & Shohl LLP
255 E. 5th St., Ste. 1900
Cincinnati, OH 45202-1971

Ohio Attorney General
30 E. Broad Street, 17th Floor
Columbus, OH 43215-3414

City of Waverly, Income Tax Dept.
PO Box 427
Waverly, OH 45690-0427

Colorado Dept. of Revenue
PO Box 17087
Denver, CO 80217-0087

Donald E. Davis
Pike County Treasurer
230 Waverly Place, #300
Waverly, OH 45690-1290

Ohio Bureau of Employment Services
Corporate Processing Dept.
Columbus, OH 43271-0977

Ohio Dept. of Job & Family Services
Office of Legal Services
30 E. Broad Street, 31st Floor
Columbus, OH 43215-3414

Pike County Chamber of Commerce
PO Box 107
Waverly, OH 45690-0107

Pike County Community & Econ.
Develop.
116 S. Market Street, Suite 103
Waverly, OH 45690-1360

Waverly Water & Sewer Dept.
211 West North Street
PO Box 228
Waverly, OH 45690-0228

Child Support Payment Center
c/o Jennifer Fate
1114 Dublin Road
Columbus, OH 43215

Alexander W. Cloonan, Esq.
McNamee & McNamee
2625 Commons Boulevard
Beavercreek, OH 45431-3704

Adam K. Biehl, Esq.
Bailey Cavalieri LLC
10 W. Broad Street, Ste. 2100
Columbus, OH 43215-3422

Thomas Breidenstien, Esq.
Stites & Harbison PLLC
Rivercenter II
100 E. RiverCenter Blvd., Ste 450
Covington, KY 41011-1596

Matthew S. Casto
Babst Calland PC
300 Summers Street, Suite 1000
Charleston, WV 25301-1632

Trischa Snyder Chapman, Esq.
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215-4234

Andrew C. Clark, Esq.
Ricketts Co., LPA
50 Hill Road South
Pickerington, OH 43147

Andrew P. Cooke, Esq.
COOKE DEMERS, LLC
260 Market Street, Suite F
New Albany, OH 43054

Kyle A. Cooper, Esq.
Green & Cooper, LLP
120 Travertine Trl
Alpharetta, GA 30022

James A. Coutinho, Esq.
ALLEN STOVALL NEUMAN FISHER
& ASHTON LLP
17 S. High Street, Suite 1220
Columbus, OH 43215

Angela D. Dodd, Esq.
United States Securities & Exchange
Commission
175 W. Jackson Blvd., Suite 1450
Chicago, IL 60604

Jennifer Fate, Esq.
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215

Lindsey Hall, Esq.
1100 Superior Avenue East, Suite 1100
Cleveland, OH 44114-2520

Daniel J. Hunter, Esq.
ALLEN STOVALL NEUMAN FISHER
& ASHTON LLP
17 S. High Street, Suite 1220
Columbus, OH 43215

Randall L. Lambert, Esq.
Lambert Law Office LLC
215 South Front St.
Ironton, OH 45638-1611

Larry J. McClatchey, Esq.
65 East State Street, Suite 1800
Columbus, OH 43215-4295

Laura M. Nesbitt, Esq.
Nesbitt Law Firm, LLC
5400 Frantz Road, Suite 210
Dublin, OH 43016

Gregory B. O'Connor, Esq.
2625 Commons Boulevard
Beavercreek, OH 45431-3704

Clinton E. Preslan, Esq.
Preslan Law, LLC
P.O. Box 16323
Rocky River, OH 44116

Daniel Anthony Richards, Esq.
1301 East Ninth Street, Suite 1900
Cleveland, OH 44114-1862

Kenneth M. Richards, Esq.
Luper, Neidenthal & Logan, LPA
1160 Dublin Road, Suite 400
Columbus, OH 43215

Richard T. Ricketts, Esq.
Ricketts Co., LPA
50 Hill Road South
Pickerington, OH 43147

Neil C. Sander, Esq.
Sander Law LLC
100 S. 4th Street, Suite 100
Columbus, OH 43215-4665

Richard K. Stovall, Esq.
ALLEN STOVALL NEUMAN FISHER
& ASHTON LLP
17 S. High Street, Suite 1220
Columbus, OH 43215

EXHIBIT A

# SETTLEMENT AGREEMENT

This *Settlement Agreement* (the "Agreement") is made by (the "Parties"):

- **Susan L. Rhiel**, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of
  Hadsell Chemical Processing (the "Debtor")
  c/o Beth M. Miller, Esq.
  THE LAW OFFICE OF BETH M. MILLER, LLC
  81 Mill Street, Suite 300
  Gahanna, OH 43230

- **Milan B. Herceg ("Mr. Herceg")**, an individual
  10152 Archer Lane
  Dublin, OH 43017

## RECITALS

A.   The Trustee is the duly appointed, qualified and acting trustee appointed in the Chapter 7
     bankruptcy case of the Debtor, which case is pending in the United States Bankruptcy
     Court for the Southern District of Ohio, Eastern Division (the "Bankruptcy Court"), and
     assigned case number 17-52717 (the "Bankruptcy Case").

B.   On April 26, 2019, the Trustee initiated an adversary proceeding captioned *Rhiel v. Herceg*,
     Adv. Pro. No. 19-02032 (the "Adversary Proceeding"), through which the Trustee made
     claims against Mr. Herceg related to alleged fraudulent transfers received from the Debtor.

C.   Mr. Herceg denies the Trustee's claims in the Adversary Proceeding.

D.   The Parties have agreed to terms of a settlement of all claims in the Adversary Proceeding
     (the "Settlement").

## TERMS OF AGREEMENT

In consideration of the promises contained in this Agreement and for other valuable
consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.   **Court Approval.** This Agreement is contingent upon the approval of the Bankruptcy Court
     in accordance Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Court
     Approval"). Court Approval occurs upon the entry of an order approving the proposed
     compromise and this Agreement. That order may only be entered after notice of the
     proposed compromise and a chance to object is given to all interested parties, which
     objections may be heard by the Court at a hearing. The Trustee will work in a commercially
     reasonable manner to obtain Court Approval of the Agreement, which will not be sought

*Settlement Agreement*                         Parties:     Susan L. Rhiel, Trustee
Page 2 of 7                                                     Milan B. Herceg

---

until payment is received in the manner set forth below. Mr. Herceg acknowledges that the approval of any motion in the Bankruptcy Case may be contested and the Trustee cannot represent how long the approval process will take. Moreover, certain parties may have appeal rights that may further affect the timing of obtaining Court Approval. Delays caused by or related to obtaining Court Approval will not be grounds for default under this Agreement and will not nullify this Agreement. This Agreement is not binding on the Trustee in any respect until the Trustee receives Court Approval of this Agreement. Notwithstanding the foregoing, the Agreement remains binding on Mr. Herceg in consideration of the promises already exchanged and the Trustee taking the actions necessary to obtain Court Approval. In the event the Bankruptcy Court does not approve this Agreement, upon the entry of a final, non-appealable order denying the approval of this Agreement, the Agreement will immediately terminate and will be considered a nullity. Within a reasonable time thereafter, any funds paid under this Agreement to the Trustee will be returned to Mr. Herceg, and the Parties will be released from all obligations and liabilities under this Agreement.

2.     **Payment of Settlement Amount**. Mr. Herceg shall pay to the Trustee the sum of *Nine Thousand Three-Hundred Seventy-Two Dollars and No Cents* **($9,372.00)** (the "Settlement Amount"). The Settlement Amount will be paid as follows:

        a.   Within fifteen (15) business days of execution of this Agreement, Mr. Herceg may deposit the full Settlement Amount into the IOLTA trust account of Mr. Herceg's counsel. Those funds will be held in trust by Mr. Herceg's counsel until Court Approval is received. Within fifteen (15) business days of obtaining Court Approval, Mr. Herceg's counsel will pay the Settlement Amount to the Trustee.

3.     **Manner of Payment**. All payments under this Agreement will be made in ordinary U.S. funds via a certified check or an IOLTA trust check payable to "Susan L. Rhiel, Trustee", with the case number for the Bankruptcy Case referenced on the check. Payment will be delivered to the Trustee at the following address:

            Susan L. Rhiel, Trustee
            THE LAW OFFICE OF BETH M. MILLER, LLC
            P.O. Box 307337
            Columbus, Ohio 43230

4.     **Release and Waiver of Claims; and Covenant Not to Sue.** Upon Court Approval and upon payment of the Settlement Amount, in exchange for the promises and other consideration made under this Agreement, the receipt and sufficiency is expressly acknowledged, each of the Parties forever release the other from any and all Claims, as defined below (the "Mutual Releases"). In addition, each of the Parties promises and covenants not to commence or maintain any lawsuit against the other whether at law or in equity in relation to any and all Claims (the "Covenant"). The Mutual Releases and Covenant are subject to the following:

*Settlement Agreement*                               Parties:   Susan L. Rhiel, Trustee
Page 3 of 7                                                     Milan B. Herceg

---

    a.   The Mutual Releases and Covenant are applicable to each of the Parties' respective affiliates, successors, assigns, predecessors, directors, officers, shareholders, members, board members, employees, representatives, attorneys, agents, counsel, sureties, and insurers, and the heirs, administrators, executors, successors, and assigns of each of them, and all those who claim through them or could claim through them, whether acting in such capacity or individually.

    b.   For the purpose of the Mutual Releases and Covenant, the term "<u>Claim</u>" means any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, bond claims, claims against public funds, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, whether existing now or to come into existence in the future, as it relates to any relationship between the Parties, the Bankruptcy Case, the Adversary Proceeding, or any other conceivable claim between the Parties, whether such Claims arise at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever one Party may have against the other.

    c.   Each of the Parties represents and warrants that they have not filed or reported any claims or complaints against the other Party in any forum and that neither have they assigned to any third party nor filed with any agency or court any claim released by this section.

    d.   Each Party acknowledges that it would not be entitled to the consideration under this Agreement, including the payment of the Settlement Amount, absent the Mutual Releases and Covenant.

5.    **Dismissal of Adversary Proceeding**. After Court Approval and receipt by the Trustee of the full amount of the Settlement Amount, the Parties will execute and file within the Adversary Proceeding a stipulation of dismissal with prejudice of the claims raised against Mr. Herceg in the Adversary Proceeding, in a form substantially similar to that attached to this Agreement.

6.    **Waiver of Claims against Bankruptcy Estate**. Mr. Herceg waives the right to file claims against the Bankruptcy Estate in relation to the Settlement and Settlement Amount. In addition, Mr. Herceg agrees that any existing or future proof of claim filed in the Bankruptcy Case shall be and hereby is waived, released, and withdrawn, including but not limited to Claim No. 33.

7.    **Representations and Warrants.** Each of the Parties represents and warrants that it is duly authorized to enter into this agreement as set forth by the signature of each Party below. Each Party is acting under its own accord, has reviewed the terms of this Agreement, and is entering into this Agreement with full knowledge of its provisions and the effect thereof.

Parties:   Susan L. Rhiel, Trustee
Milan B. Herceg

8. **Breach of Agreement.** The Parties expressly reserve their right to enforce a breach of this Agreement. Nothing in this Agreement will be construed as prohibiting the non-breaching party from pursuing any remedies available for such breach, including the recovery of damages and the costs incurred by the non-breaching party to enforce the terms of this Agreement, including its reasonable attorneys' fees. In the event of a breach of the payment obligations under this Agreement by Mr. Herceg, and in the absence of a cure of the breach within ten (10) business days of written demand, the Trustee, at her election, may either terminate this Agreement and proceed with any and all claims in the Adversary Proceeding, or the Trustee may seek to enforce this Agreement by specific performance. Mr. Herceg waives any defenses or arguments related to the delay of the Adversary Proceeding that arise out of the Parties' efforts to settle the Adversary Proceeding and any delay caused by the Court Approval Process.

9. **Miscellaneous Provisions.**

   a. **No Admission.** Nothing contained in this Agreement will be construed as an admission of any liability by any Party to this Agreement of any claims alleged by any Party.

   b. **Binding Effect; No Assignments; No Third-Party Benefit.** Except as to the Trustee in the paragraph defining Court Approval, this Agreement is binding upon the Parties and upon, as applicable, their respective heirs, administrators, representatives, executors, successors, and assigns. No Party may assign either this Agreement or any of its rights, interests, or obligations under this Agreement without prior written approval of the other Party. None of the provisions of this Agreement are for the benefit of, or enforceable by, any person that is not a Party, nor will any provisions be deemed to create any right in any person not a Party to this Agreement.

   c. **Severability.** If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable. It is the intention of the Parties that if any provision of this Agreement is susceptible of two or more constructions, one which would render the provision enforceable and the other or others of which would render the provision unenforceable, then the provision will have the meaning that renders it enforceable.

   d. **Modifications to Agreement.** No provision of this Agreement may be modified or discharged unless that modification or discharge is agreed to in writing and signed by all Parties. Certain provisions may only be modified with Court Approval, the determination of which is at the sole discretion of the Trustee. No provision of this Agreement may be waived unless such waiver is in writing and signed by the party

to be charged with the waiver. No waiver of a breach under this Agreement will be deemed a waiver of any other provisions of the Agreement or any other breaches.

e. **Entire Agreement.** This Agreement contains the entire agreement of the Parties about the subjects in it, and it replaces all prior contemporaneous oral or written agreements, understandings, statements, representations and promises by any Party.

f. **Effect of Termination of Agreement on Adversary Proceeding.** In the event this Agreement is terminated—whether that termination arises from agreement of the Parties, denial of Court Approval, breach, or any other matter—the Parties agree that all matters related to the Adversary Proceeding will be reset as if the settlement never occurred, should the Trustee elect to proceed with the Adversary Proceeding. In particular, Mr. Herceg shall agree to a case schedule appropriate for the Adversary Proceeding notwithstanding any delay in those proceedings due to the settlement process.

g. **Governing Law; Venue.** This Agreement will be governed by the laws of the State of Ohio or the Bankruptcy Code, as applicable. All matters related to this Agreement must be filed in the Bankruptcy Court.

h. **Counterpart Execution.** This Agreement may be executed in several counterparts and, as so executed, will constitute one agreement binding on all Parties, notwithstanding that all Parties have not signed the original or the same counterpart. Digital images, faxes, and photocopies of this Agreement and the signatures are sufficient for enforcement of this Agreement.

i. **Notices.** All notices and other communications under this Agreement must be mailed by nationally recognized overnight courier or delivered by personal service. Notices are deemed delivered when received. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice was given shall be deemed to be a receipt of the notice, request or other communication. Notices will be sent to the addresses set forth at the beginning of this Agreement, which notice address may be changed by giving notice of the change in writing.

j. **Further Assurances.** The Parties agree to freely execute any and all additional documents required to give this Agreement its full effect.

k. **Force Majeure.** Time is of the essence for all provisions of this Agreement, however the Parties shall be excused for the period of any delay in performance of any obligations hereunder when prevented from doing so by the wrongful or negligent acts or omissions of the other Party or by causes beyond either Party's control, which shall include epidemics, pandemics, disease, illness or quarantine. If any such event prevents one of the Parties from performance of any obligations hereunder, counsel for the Parties shall meet and confer regarding an extended deadline.

*Settlement Agreement*
Page 6 of 7

Parties:   Susan L. Rhiel, Trustee
Milan B. Herceg

l. **Headings for Convenience Only.** The headings to the sections of this Agreement have been inserted for convenience only and will in no way modify or restrict any provisions hereof or be used to construe any such provisions.

m. **Representation of Parties and Joint Drafting.** All of the Parties have had the opportunity to have this Agreement reviewed by the appropriate professionals and each Party is deemed to have been represented in this transaction. The Parties are deemed to have jointly drafted this Agreement, and no interpretation will be construed against any Party as the drafter.

**[EXECUTION ON FOLLOWING PAGE]**

*Settlement Agreement*
Page 7 of 7

Parties:    Susan L. Rhiel, Trustee
Milan B. Herceg

## SIGNATURES

By execution this Agreement, the Parties each acknowledge that they are in agreement with the foregoing provisions and that this Agreement shall be a binding as set forth within the Agreement.

_____    _____
**Milan B. Herceg**                    Date

_____    _____
**Susan L. Rhiel, Chapter 7 Trustee**    Date
**for Hadsell Chemical Processing**
**Case No. 17-52717**

*Settlement Agreement*
Page 7 of 7

Parties:   Susan L. Rhiel, Trustee
           Milan B. Herceg

## SIGNATURES

By execution this Agreement, the Parties each acknowledge that they are in agreement with the foregoing provisions and that this Agreement shall be a binding as set forth within the Agreement.

_____        _____
Milan B. Herceg                         Date

_____        11/13/20
Susan L. Rhiel, Chapter 7 Trustee       _____
for Hadsell Chemical Processing         Date
Case No. 17-52717

# DISMISSAL STIPULATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 17-52717 |
| Hadsell Chemical Processing, LLC | : | Chapter 7 |
| | : | |
| Debtor. | : | Judge John E. Hoffman, Jr. |

| | | |
|---|---|---|
| Susan L. Rhiel, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No.: 19-02032 |
| | : | |
| vs. | : | |
| | : | |
| Milan B. Herceg, | : | |
| | : | |
| Defendant. | : | |

**<u>NOTICE OF STIPULATED DISMISSAL WITH PREJUDICE</u>**

Pursuant to Federal Rule of Civil Procedure 41(a)(1), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7041, and the authority granted pursuant to the *Order Granting Trustee's Motion to Compromise Claims with Milan B. Herceg* (Bankruptcy Case Doc. _____), the Plaintiff Susan L. Rhiel, Chapter 7 Trustee, and the Defendant stipulate to

1

the dismissal of all counts against the Defendant in this adversary proceeding. This dismissal is

**with prejudice**.

   Respectfully submitted,

Beth M. Miller (0072747)
THE LAW OFFICE OF BETH M. MILLER, LLC
81 Mill Street, Suite 300
Gahanna, OH 43230
Telephone: (614) 221-4670
Email: miller@bmillerlawoffice.com

*Attorney for Chapter 7 Trustee*

(per e-mail authority on _____)
David M. Whittaker (0019307)
ISAAC WILES BURKHOLDER
& TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, OH 43215
Telephone: (614) 340-7431
Facsimile:  (614) 365-9516
Email: dwhittaker@isaacwiles.com

*Attorney for Defendant*

# SETTLEMENT AGREEMENT

This *Settlement Agreement* (the "Agreement") is made by (the "Parties"):

- **Susan L. Rhiel**, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Hadsell Chemical Processing (the "Debtor")
  c/o Beth M. Miller, Esq.
  THE LAW OFFICE OF BETH M. MILLER, LLC
  81 Mill Street, Suite 300
  Gahanna, OH 43230

- **Michael J. Ramicone ("Mr. Ramicone")**, an individual
  2863 Creekwood Estates Drive
  Blacklick, OH 43004

## RECITALS

A.    The Trustee is the duly appointed, qualified and acting trustee appointed in the Chapter 7 bankruptcy case of the Debtor, which case is pending in the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division (the "Bankruptcy Court"), and assigned case number 17-52717 (the "Bankruptcy Case").

B.    On April 26, 2019, the Trustee initiated an adversary proceeding captioned *Rhiel v. Ramicone,* Adv. Pro. No. 19-02033 (the "Adversary Proceeding"), through which the Trustee made claims against Mr. Ramicone related to alleged fraudulent transfers received from the Debtor.

C.    Mr. Ramicone denies the Trustee's claims in the Adversary Proceeding.

D.    The Parties have agreed to terms of a settlement of all claims in the Adversary Proceeding (the "Settlement").

## TERMS OF AGREEMENT

In consideration of the promises contained in this Agreement and for other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.    **Court Approval.** This Agreement is contingent upon the approval of the Bankruptcy Court in accordance Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Court Approval"). Court Approval occurs upon the entry of an order approving the proposed compromise and this Agreement. That order may only be entered after notice of the proposed compromise and a chance to object is given to all interested parties, which objections may be heard by the Court at a hearing. The Trustee will work in a commercially

reasonable manner to obtain Court Approval of the Agreement, which will not be sought until payment is received in the manner set forth below. Mr. Ramicone acknowledges that the approval of any motion in the Bankruptcy Case may be contested and the Trustee cannot represent how long the approval process will take. Moreover, certain parties may have appeal rights that may further affect the timing of obtaining Court Approval. Delays caused by or related to obtaining Court Approval will not be grounds for default under this Agreement and will not nullify this Agreement. This Agreement is not binding on the Trustee in any respect until the Trustee receives Court Approval of this Agreement. Notwithstanding the foregoing, the Agreement remains binding on Mr. Ramicone in consideration of the promises already exchanged and the Trustee taking the actions necessary to obtain Court Approval. In the event the Bankruptcy Court does not approve this Agreement, upon the entry of a final, non-appealable order denying the approval of this Agreement, the Agreement will immediately terminate and will be considered a nullity. Within a reasonable time thereafter, any funds paid under this Agreement to the Trustee will be returned to Mr. Ramicone, and the Parties will be released from all obligations and liabilities under this Agreement.

2.      **Payment of Settlement Amount**. Mr. Ramicone shall pay to the Trustee the sum of *Eight-Thousand Two-Hundred Three Dollars and No Cents* (**$8,203.00**) (the "Settlement Amount"). The Settlement Amount will be paid as follows:

   a.   Within fifteen (15) business days of execution of this Agreement, Mr. Ramicone may deposit the full Settlement Amount into the IOLTA trust account of Mr. Ramicone's counsel. Those funds will be held in trust by Mr. Ramicone's counsel until Court Approval is received. Within fifteen (15) business days of obtaining Court Approval, Mr. Ramicone's counsel will pay the Settlement Amount to the Trustee.

3.      **Manner of Payment**. All payments under this Agreement will be made in ordinary U.S. funds via a certified check or an IOLTA trust check payable to "Susan L. Rhiel, Trustee", with the case number for the Bankruptcy Case referenced on the check. Payment will be delivered to the Trustee at the following address:

   Susan L. Rhiel, Trustee
   THE LAW OFFICE OF BETH M. MILLER, LLC
   P.O. Box 307337
   Columbus, Ohio 43230

4.      **Release and Waiver of Claims; and Covenant Not to Sue.** Upon Court Approval and upon payment of the Settlement Amount, in exchange for the promises and other consideration made under this Agreement, the receipt and sufficiency is expressly acknowledged, each of the Parties forever release the other from any and all Claims, as defined below (the "Mutual Releases"). In addition, each of the Parties promises and covenants not to commence or maintain any lawsuit against the other whether at law or in

equity in relation to any and all Claims (the "Covenant"). The Mutual Releases and Covenant are subject to the following:

a. The Mutual Releases and Covenant are applicable to each of the Parties' respective affiliates, successors, assigns, predecessors, directors, officers, shareholders, members, board members, employees, representatives, attorneys, agents, counsel, sureties, and insurers, and the heirs, administrators, executors, successors, and assigns of each of them, and all those who claim through them or could claim through them, whether acting in such capacity or individually.

b. For the purpose of the Mutual Releases and Covenant, the term "Claim" means any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, bond claims, claims against public funds, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, whether existing now or to come into existence in the future, as it relates to any relationship between the Parties, the Bankruptcy Case, the Adversary Proceeding, or any other conceivable claim between the Parties, whether such Claims arise at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever one Party may have against the other.

c. Each of the Parties represents and warrants that they have not filed or reported any claims or complaints against the other Party in any forum and that neither have they assigned to any third party nor filed with any agency or court any claim released by this section.

d. Each Party acknowledges that it would not be entitled to the consideration under this Agreement, including the payment of the Settlement Amount, absent the Mutual Releases and Covenant.

**5.**   **Dismissal of Adversary Proceeding**. After Court Approval and receipt by the Trustee of the full amount of the Settlement Amount, the Parties will execute and file within the Adversary Proceeding a stipulation of dismissal with prejudice of the claims raised against Mr. Ramicone in the Adversary Proceeding, in a form substantially similar to that attached to this Agreement.

**6.**   **Waiver of Claims against Bankruptcy Estate**. Mr. Ramicone waives the right to file claims against the Bankruptcy Estate in relation to the Settlement and Settlement Amount. In addition, Mr. Ramicone agrees that any existing or future proof of claim filed in the Bankruptcy Case shall be and hereby is waived, released, and withdrawn, including but not limited to Claim No. 32.

**7.**     **Representations and Warrants.** Each of the Parties represents and warrants that it is duly authorized to enter into this agreement as set forth by the signature of each Party below. Each Party is acting under its own accord, has reviewed the terms of this Agreement, and is entering into this Agreement with full knowledge of its provisions and the effect thereof.

**8.**     **Breach of Agreement.** The Parties expressly reserve their right to enforce a breach of this Agreement. Nothing in this Agreement will be construed as prohibiting the non-breaching party from pursuing any remedies available for such breach, including the recovery of damages and the costs incurred by the non-breaching party to enforce the terms of this Agreement, including its reasonable attorneys' fees. In the event of a breach of the payment obligations under this Agreement by Mr. Ramicone, and in the absence of a cure of the breach within ten (10) business days of written demand, the Trustee, at her election, may either terminate this Agreement and proceed with any and all claims in the Adversary Proceeding, or the Trustee may seek to enforce this Agreement by specific performance. Mr. Ramicone waives any defenses or arguments related to the delay of the Adversary Proceeding that arise out of the Parties' efforts to settle the Adversary Proceeding and any delay caused by the Court Approval Process.

**9.**     **Miscellaneous Provisions.**

  a.    **No Admission.** Nothing contained in this Agreement will be construed as an admission of any liability by any Party to this Agreement of any claims alleged by any Party.

  b.    **Binding Effect; No Assignments; No Third-Party Benefit.** Except as to the Trustee in the paragraph defining Court Approval, this Agreement is binding upon the Parties and upon, as applicable, their respective heirs, administrators, representatives, executors, successors, and assigns. No Party may assign either this Agreement or any of its rights, interests, or obligations under this Agreement without prior written approval of the other Party. None of the provisions of this Agreement are for the benefit of, or enforceable by, any person that is not a Party, nor will any provisions be deemed to create any right in any person not a Party to this Agreement.

  c.    **Severability.** If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable. It is the intention of the Parties that if any provision of this Agreement is susceptible of two or more constructions, one which would render the provision enforceable and the other or others of which would render the provision unenforceable, then the provision will have the meaning that renders it enforceable.

d. **Modifications to Agreement.** No provision of this Agreement may be modified or discharged unless that modification or discharge is agreed to in writing and signed by all Parties. Certain provisions may only be modified with Court Approval, the determination of which is at the sole discretion of the Trustee. No provision of this Agreement may be waived unless such waiver is in writing and signed by the party to be charged with the waiver. No waiver of a breach under this Agreement will be deemed a waiver of any other provisions of the Agreement or any other breaches.

e. **Entire Agreement.** This Agreement contains the entire agreement of the Parties about the subjects in it, and it replaces all prior contemporaneous oral or written agreements, understandings, statements, representations and promises by any Party.

f. **Effect of Termination of Agreement on Adversary Proceeding.** In the event this Agreement is terminated—whether that termination arises from agreement of the Parties, denial of Court Approval, breach, or any other matter—the Parties agree that all matters related to the Adversary Proceeding will be reset as if the settlement never occurred, should the Trustee elect to proceed with the Adversary Proceeding. In particular, Mr. Ramicone shall agree to a case schedule appropriate for the Adversary Proceeding notwithstanding any delay in those proceedings due to the settlement process.

g. **Governing Law; Venue.** This Agreement will be governed by the laws of the State of Ohio or the Bankruptcy Code, as applicable. All matters related to this Agreement must be filed in the Bankruptcy Court.

h. **Counterpart Execution.** This Agreement may be executed in several counterparts and, as so executed, will constitute one agreement binding on all Parties, notwithstanding that all Parties have not signed the original or the same counterpart. Digital images, faxes, and photocopies of this Agreement and the signatures are sufficient for enforcement of this Agreement.

i. **Notices.** All notices and other communications under this Agreement must be mailed by nationally recognized overnight courier or delivered by personal service. Notices are deemed delivered when received. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice was given shall be deemed to be a receipt of the notice, request or other communication. Notices will be sent to the addresses set forth at the beginning of this Agreement, which notice address may be changed by giving notice of the change in writing.

j. **Further Assurances.** The Parties agree to freely execute any and all additional documents required to give this Agreement its full effect.

k. **Force Majeure**.  Time is of the essence for all provisions of this Agreement, however the Parties shall be excused for the period of any delay in performance of any obligations hereunder when prevented from doing so by the wrongful or negligent acts or omissions of the other Party or by causes beyond either Party's

control, which shall include epidemics, pandemics, disease, illness or quarantine. If any such event prevents one of the Parties from performance of any obligations hereunder, counsel for the Parties shall meet and confer regarding an extended deadline.

l.   **Headings for Convenience Only.** The headings to the sections of this Agreement have been inserted for convenience only and will in no way modify or restrict any provisions hereof or be used to construe any such provisions.

m.   **Representation of Parties and Joint Drafting.** All of the Parties have had the opportunity to have this Agreement reviewed by the appropriate professionals and each Party is deemed to have been represented in this transaction. The Parties are deemed to have jointly drafted this Agreement, and no interpretation will be construed against any Party as the drafter.

**[EXECUTION ON FOLLOWING PAGE]**

*Settlement Agreement*
*Page 7 of 7*

Parties:    Susan L. Rhiel, Trustee
Michael J. Ramicone

## SIGNATURES

By execution this Agreement, the Parties each acknowledge that they are in agreement with the foregoing provisions and that this Agreement shall be a binding as set forth within the Agreement.

**Michael J. Ramicone**

November 16, 2020
Date

**Susan L. Rhiel, Chapter 7 Trustee**
**for Hadsell Chemical Processing**
**Case No. 17-52717**

11/16/20
Date

# DISMISSAL STIPULATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 17-52717 |
|     Hadsell Chemical Processing, LLC | : | Chapter 7 |
| | : | |
|     Debtor. | : | Judge John E. Hoffman, Jr. |

| | | |
|---|---|---|
| Susan L. Rhiel, Chapter 7 Trustee, | : | |
| | : | |
|     Plaintiff, | : | Adv. Pro. No.: 19-02033 |
| | : | |
|     vs. | : | |
| | : | |
| Michael J. Ramicone, | : | |
| | : | |
|     Defendant. | : | |

### NOTICE OF STIPULATED DISMISSAL WITH PREJUDICE

Pursuant to Federal Rule of Civil Procedure 41(a)(1), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7041, and the authority granted pursuant to the *Order Granting Trustee's Motion to Compromise Claims with Michael J. Ramicone* (Bankruptcy Case Doc. _____), the Plaintiff Susan L. Rhiel, Chapter 7 Trustee, and the Defendant

1

stipulate to the dismissal of all counts against the Defendant in this adversary proceeding. This

dismissal is **with prejudice**.

     Respectfully submitted,


*/s/ Beth M. Miller*_____        _____
Beth M. Miller (0072747)           (per e-mail authority on _____)
THE LAW OFFICE OF BETH M. MILLER, LLC    David M. Whittaker (0019307)
81 Mill Street, Suite 300           ISAAC WILES BURKHOLDER
Gahanna, OH 43230             & TEETOR, LLC
Telephone: (614) 221-4670        Two Miranova Place, Suite 700
Email: miller@bmillerlawoffice.com    Columbus, OH 43215
                                     Telephone: (614) 340-7431
*Attorney for Chapter 7 Trustee*      Facsimile:  (614) 365-9516
                                     Email: dwhittaker@isaacwiles.com

                                     *Attorney for Defendant*

# SETTLEMENT AGREEMENT

This *Settlement Agreement* (the "Agreement") is made by (the "Parties"):

- **Susan L. Rhiel**, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of
  Hadsell Chemical Processing (the "Debtor")
  c/o Beth M. Miller, Esq.
  THE LAW OFFICE OF BETH M. MILLER, LLC
  81 Mill Street, Suite 300
  Gahanna, OH 43230

- **Brian Spires ("Mr. Spires")**, an individual
  4511 Central College Road
  Westerville, OH 43081

## RECITALS

A.    The Trustee is the duly appointed, qualified and acting trustee appointed in the Chapter 7
      bankruptcy case of the Debtor, which case is pending in the United States Bankruptcy
      Court for the Southern District of Ohio, Eastern Division (the "Bankruptcy Court"), and
      assigned case number 17-52717 (the "Bankruptcy Case").

B.    On April 27, 2019, the Trustee initiated an adversary proceeding captioned *Rhiel v. Spires,*
      Adv. Pro. No. 19-02035 (the "Adversary Proceeding"), through which the Trustee made
      claims against Mr. Spires related to alleged fraudulent transfers received from the Debtor.

C.    Mr. Spires denies the Trustee's claims in the Adversary Proceeding.

D.    The Parties have agreed to terms of a settlement of all claims in the Adversary Proceeding
      (the "Settlement").

## TERMS OF AGREEMENT

In consideration of the promises contained in this Agreement and for other valuable
consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.    **Court Approval.** This Agreement is contingent upon the approval of the Bankruptcy Court
      in accordance Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Court
      Approval"). Court Approval occurs upon the entry of an order approving the proposed
      compromise and this Agreement. That order may only be entered after notice of the
      proposed compromise and a chance to object is given to all interested parties, which
      objections may be heard by the Court at a hearing. The Trustee will work in a commercially
      reasonable manner to obtain Court Approval of the Agreement, which will not be sought

until payment is received in the manner set forth below. Mr. Spires acknowledge that the approval of any motion in the Bankruptcy Case may be contested and the Trustee cannot represent how long the approval process will take. Moreover, certain parties may have appeal rights that may further affect the timing of obtaining Court Approval. Delays caused by or related to obtaining Court Approval will not be grounds for default under this Agreement and will not nullify this Agreement. This Agreement is not binding on the Trustee in any respect until the Trustee receives Court Approval of this Agreement. Notwithstanding the foregoing, the Agreement remains binding on Mr. Spires in consideration of the promises already exchanged and the Trustee taking the actions necessary to obtain Court Approval. In the event the Bankruptcy Court does not approve this Agreement, upon the entry of a final, non-appealable order denying the approval of this Agreement, the Agreement will immediately terminate and will be considered a nullity. Within a reasonable time thereafter, any funds paid under this Agreement to the Trustee will be returned to Spires, and the Parties will be released from all obligations and liabilities under this Agreement.

2.      **Payment of Settlement Amount**. Mr. Spires shall pay to the Trustee the sum of *Eight Thousand Ninety-Five Dollars and No Cents* **($8,095.00)** (the "Settlement Amount"). The Settlement Amount will be paid as follows:

   a.   Within fifteen (15) business days of execution of this Agreement, Mr. Spires may deposit the full Settlement Amount into the IOLTA trust account of Mr. Spires' counsel. Those funds will be held in trust by Mr. Spires' counsel until Court Approval is received. Within fifteen (15) business days of obtaining Court Approval, Mr. Spires' counsel will pay the Settlement Amount to the Trustee.

3.      **Manner of Payment**. All payments under this Agreement will be made in ordinary U.S. funds via a certified check or an IOLTA trust check payable to "Susan L. Rhiel, Trustee", with the case number for the Bankruptcy Case referenced on the check. Payment will be delivered to the Trustee at the following address:

   Susan L. Rhiel, Trustee
   THE LAW OFFICE OF BETH M. MILLER, LLC
   P.O. Box 307337
   Columbus, Ohio 43230

4.      **Release and Waiver of Claims; and Covenant Not to Sue.** Upon Court Approval and upon payment of the Settlement Amount, in exchange for the promises and other consideration made under this Agreement, the receipt and sufficiency is expressly acknowledged, each of the Parties forever release the other from any and all Claims, as defined below (the "Mutual Releases"). In addition, each of the Parties promises and covenants not to commence or maintain any lawsuit against the other whether at law or in equity in relation to any and all Claims (the "Covenant"). The Mutual Releases and Covenant are subject to the following:

*Settlement Agreement*                                   Parties:     Susan L. Rhiel, Trustee
Page 3 of 7                                                            Brian Spires

---

a.  The Mutual Releases and Covenant are applicable to each of the Parties' respective affiliates, successors, assigns, predecessors, directors, officers, shareholders, members, board members, employees, representatives, attorneys, agents, counsel, sureties, and insurers, and the heirs, administrators, executors, successors, and assigns of each of them, and all those who claim through them or could claim through them, whether acting in such capacity or individually.

b.  For the purpose of the Mutual Releases and Covenant, the term "<u>Claim</u>" means any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, bond claims, claims against public funds, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, whether existing now or to come into existence in the future, as it relates to any relationship between the Parties, the Bankruptcy Case, the Adversary Proceeding, or any other conceivable claim between the Parties, whether such Claims arise at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever one Party may have against the other.

c.  Each of the Parties represents and warrants that they have not filed or reported any claims or complaints against the other Party in any forum and that neither have they assigned to any third party nor filed with any agency or court any claim released by this section.

d.  Each Party acknowledges that it would not be entitled to the consideration under this Agreement, including the payment of the Settlement Amount, absent the Mutual Releases and Covenant.

5.  **Dismissal of Adversary Proceeding**. After Court Approval and receipt by the Trustee of the full amount of the Settlement Amount, the Parties will execute and file within the Adversary Proceeding a stipulation of dismissal with prejudice of the claims raised against Mr. Spires in the Adversary Proceeding, in a form substantially similar to that attached to this Agreement.

6.  **Waiver of Claims against Bankruptcy Estate**. Mr. Spires waives the right to file claims against the Bankruptcy Estate in relation to the Settlement and Settlement Amount. In addition, Mr. Spires agrees that any existing or future proof of claim filed in the Bankruptcy Case shall be and hereby is waived, released, and withdrawn, including but not limited to Claim No. 40.

7.  **Representations and Warrants.** Each of the Parties represents and warrants that it is duly authorized to enter into this agreement as set forth by the signature of each Party below. Each Party is acting under its own accord, has reviewed the terms of this Agreement, and is entering into this Agreement with full knowledge of its provisions and the effect thereof.

8. **Breach of Agreement.** The Parties expressly reserve their right to enforce a breach of this Agreement. Nothing in this Agreement will be construed as prohibiting the non-breaching party from pursuing any remedies available for such breach, including the recovery of damages and the costs incurred by the non-breaching party to enforce the terms of this Agreement, including its reasonable attorneys' fees. In the event of a breach of the payment obligations under this Agreement by Mr. Spires, and in the absence of a cure of the breach within ten (10) business days of written demand, the Trustee, at her election, may either terminate this Agreement and proceed with any and all claims in the Adversary Proceeding, or the Trustee may seek to enforce this Agreement by specific performance. Mr. Spires waives any defenses or arguments related to the delay of the Adversary Proceeding that arise out of the Parties' efforts to settle the Adversary Proceeding and any delay caused by the Court Approval Process.

9. **Miscellaneous Provisions.**

   a. **No Admission.** Nothing contained in this Agreement will be construed as an admission of any liability by any Party to this Agreement of any claims alleged by any Party.

   b. **Binding Effect; No Assignments; No Third-Party Benefit.** Except as to the Trustee in the paragraph defining Court Approval, this Agreement is binding upon the Parties and upon, as applicable, their respective heirs, administrators, representatives, executors, successors, and assigns. No Party may assign either this Agreement or any of its rights, interests, or obligations under this Agreement without prior written approval of the other Party. None of the provisions of this Agreement are for the benefit of, or enforceable by, any person that is not a Party, nor will any provisions be deemed to create any right in any person not a Party to this Agreement.

   c. **Severability.** If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable. It is the intention of the Parties that if any provision of this Agreement is susceptible of two or more constructions, one which would render the provision enforceable and the other or others of which would render the provision unenforceable, then the provision will have the meaning that renders it enforceable.

   d. **Modifications to Agreement.** No provision of this Agreement may be modified or discharged unless that modification or discharge is agreed to in writing and signed by all Parties. Certain provisions may only be modified with Court Approval, the determination of which is at the sole discretion of the Trustee. No provision of this Agreement may be waived unless such waiver is in writing and signed by the party

to be charged with the waiver. No waiver of a breach under this Agreement will be deemed a waiver of any other provisions of the Agreement or any other breaches.

e.  **Entire Agreement.** This Agreement contains the entire agreement of the Parties about the subjects in it, and it replaces all prior contemporaneous oral or written agreements, understandings, statements, representations and promises by any Party.

f.  **Effect of Termination of Agreement on Adversary Proceeding.** In the event this Agreement is terminated—whether that termination arises from agreement of the Parties, denial of Court Approval, breach, or any other matter—the Parties agree that all matters related to the Adversary Proceeding will be reset as if the settlement never occurred, should the Trustee elect to proceed with the Adversary Proceeding. In particular, Mr. Spires shall agree to a case schedule appropriate for the Adversary Proceeding notwithstanding any delay in those proceedings due to the settlement process.

g.  **Governing Law; Venue.** This Agreement will be governed by the laws of the State of Ohio or the Bankruptcy Code, as applicable. All matters related to this Agreement must be filed in the Bankruptcy Court.

h.  **Counterpart Execution.** This Agreement may be executed in several counterparts and, as so executed, will constitute one agreement binding on all Parties, notwithstanding that all Parties have not signed the original or the same counterpart. Digital images, faxes, and photocopies of this Agreement and the signatures are sufficient for enforcement of this Agreement.

i.  **Notices.** All notices and other communications under this Agreement must be mailed by nationally recognized overnight courier or delivered by personal service. Notices are deemed delivered when received. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice was given shall be deemed to be a receipt of the notice, request or other communication. Notices will be sent to the addresses set forth at the beginning of this Agreement, which notice address may be changed by giving notice of the change in writing.

j.  **Further Assurances.** The Parties agree to freely execute any and all additional documents required to give this Agreement its full effect.

k.  **Force Majeure.** Time is of the essence for all provisions of this Agreement, however the Parties shall be excused for the period of any delay in performance of any obligations hereunder when prevented from doing so by the wrongful or negligent acts or omissions of the other Party or by causes beyond either Party's control, which shall include epidemics, pandemics, disease, illness or quarantine. If any such event prevents one of the Parties from performance of any obligations hereunder, counsel for the Parties shall meet and confer regarding an extended deadline.

l.   **Headings for Convenience Only.** The headings to the sections of this Agreement have been inserted for convenience only and will in no way modify or restrict any provisions hereof or be used to construe any such provisions.

m.   **Representation of Parties and Joint Drafting.** All of the Parties have had the opportunity to have this Agreement reviewed by the appropriate professionals and each Party is deemed to have been represented in this transaction. The Parties are deemed to have jointly drafted this Agreement, and no interpretation will be construed against any Party as the drafter.

**[EXECUTION ON FOLLOWING PAGE]**

*Settlement Agreement*
Page 7 of 7

Parties:   Susan L. Rhiel, Trustee
Brian Spires

## SIGNATURES

By execution this Agreement, the Parties each acknowledge that they are in agreement with the foregoing provisions and that this Agreement shall be a binding as set forth within the Agreement.

**Brian Spires**

11/16/2020

Date

**Susan L. Rhiel, Chapter 7 Trustee
for Hadsell Chemical Processing
Case No. 17-52717**

11/16/20

Date

DISMISSAL STIPULATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 17-52717 |
| Hadsell Chemical Processing, LLC | : | Chapter 7 |
| | : | |
| Debtor. | : | Judge John E. Hoffman, Jr. |

| | | |
|---|---|---|
| Susan L. Rhiel, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No.: 19-02035 |
| | : | |
| vs. | : | |
| | : | |
| Brian Spires, | : | |
| | : | |
| Defendant. | : | |

<u>**NOTICE OF STIPULATED DISMISSAL WITH PREJUDICE**</u>

Pursuant to Federal Rule of Civil Procedure 41(a)(1), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7041, and the authority granted pursuant to the *Order Granting Trustee's Motion to Compromise Claims with Brian Spires* (Bankruptcy Case Doc. _____), the Plaintiff Susan L. Rhiel, Chapter 7 Trustee, and the Defendant stipulate to the

1

dismissal of all counts against all defendants in this adversary proceeding. This dismissal is **with prejudice**.

      Respectfully submitted,


| | |
|---|---|
| _____ | _____ |
| Beth M. Miller (0072747) | (per e-mail authority on _____) |
| THE LAW OFFICE OF BETH M. MILLER, LLC | David M. Whittaker (0019307) |
| 81 Mill Street, Suite 300 | ISAAC WILES BURKHOLDER |
| Gahanna, OH 43230 | & TEETOR, LLC |
| Telephone: (614) 221-4670 | Two Miranova Place, Suite 700 |
| Email: miller@bmillerlawoffice.com | Columbus, OH 43215 |
| | Telephone: (614) 340-7431 |
| *Attorney for Chapter 7 Trustee* | Facsimile:  (614) 365-9516 |
| | Email: dwhittaker@isaacwiles.com |
| | |
| | *Attorney for Defendant* |

# SETTLEMENT AGREEMENT

This *Settlement Agreement* (the "Agreement") is made by (the "Parties"):

- **Susan L. Rhiel**, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of
  Hadsell Chemical Processing (the "Debtor")
  c/o Beth M. Miller, Esq.
  THE LAW OFFICE OF BETH M. MILLER, LLC
  81 Mill Street, Suite 300
  Gahanna, OH 43230

- **Christina Britton ("Ms. Britton")**, an individual
  7355 Southfield Road
  New Albany, OH 43054

## RECITALS

A.  The Trustee is the duly appointed, qualified and acting trustee appointed in the Chapter 7
bankruptcy case of the Debtor, which case is pending in the United States Bankruptcy
Court for the Southern District of Ohio, Eastern Division (the "Bankruptcy Court"), and
assigned case number 17-52717 (the "Bankruptcy Case").

B.  On April 27, 2019, the Trustee initiated an adversary proceeding captioned *Rhiel v. Britton,
et al.*, Adv. Pro. No. 19-02037 (the "Adversary Proceeding"), through which the Trustee
made claims against Ms. Britton related to alleged fraudulent transfers received from the
Debtor. In addition to the claims stated against Ms. Britton, the Trustee also sued
AdvantaIRA Trust, LLC ("AdvantaIRA,") in its capacity as an account servicer for one or
more accounts benefitting or belonging to Ms. Britton.

C.  Ms. Britton denies the Trustee's claims in the Adversary Proceeding.

D.  The Parties have agreed to terms of a settlement of all claims in the Adversary Proceeding
(the "Settlement").

## TERMS OF AGREEMENT

In consideration of the promises contained in this Agreement and for other valuable
consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.  **Court Approval.** This Agreement is contingent upon the approval of the Bankruptcy Court
in accordance Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Court
Approval"). Court Approval occurs upon the entry of an order approving the proposed
compromise and this Agreement. That order may only be entered after notice of the

proposed compromise and a chance to object is given to all interested parties, which objections may be heard by the Court at a hearing. The Trustee will work in a commercially reasonable manner to obtain Court Approval of the Agreement, which will not be sought until payment is received in the manner set forth below. Ms. Britton acknowledge that the approval of any motion in the Bankruptcy Case may be contested and the Trustee cannot represent how long the approval process will take. Moreover, certain parties may have appeal rights that may further affect the timing of obtaining Court Approval. Delays caused by or related to obtaining Court Approval will not be grounds for default under this Agreement and will not nullify this Agreement. This Agreement is not binding on the Trustee in any respect until the Trustee receives Court Approval of this Agreement. Notwithstanding the foregoing, the Agreement remains binding on Ms. Britton in consideration of the promises already exchanged and the Trustee taking the actions necessary to obtain Court Approval. In the event the Bankruptcy Court does not approve this Agreement, upon the entry of a final, non-appealable order denying the approval of this Agreement, the Agreement will immediately terminate and will be considered a nullity. Within a reasonable time thereafter, any funds paid under this Agreement to the Trustee will be returned to Ms. Britton, and the Parties will be released from all obligations and liabilities under this Agreement.

2.  **Payment of Settlement Amount**. Ms. Britton shall pay to the Trustee the sum of *Twelve Thousand Thirty Dollars and No Cents* **($12,030.00)** (the "Settlement Amount"). The Settlement Amount will be paid as follows:

    a.  Within fifteen (15) business days of execution of this Agreement, Ms. Britton may deposit the full Settlement Amount into the IOLTA trust account of Ms. Britton's counsel. Those funds will be held in trust by Ms. Britton's counsel until Court Approval is received. Within fifteen (15) business days of obtaining Court Approval, Ms. Britton's counsel will pay the Settlement Amount to the Trustee.

3.  **Manner of Payment**. All payments under this Agreement will be made in ordinary U.S. funds via a certified check or an IOLTA trust check payable to "Susan L. Rhiel, Trustee", with the case number for the Bankruptcy Case referenced on the check. Payment will be delivered to the Trustee at the following address:

    Susan L. Rhiel, Trustee
    THE LAW OFFICE OF BETH M. MILLER, LLC
    P.O. Box 307337
    Columbus, Ohio 43230

4.  **Release and Waiver of Claims; and Covenant Not to Sue**. Upon Court Approval and upon payment of the Settlement Amount, in exchange for the promises and other consideration made under this Agreement, the receipt and sufficiency is expressly acknowledged, each of the Parties forever release the other from any and all Claims, as defined below (the "Mutual Releases"). In addition, each of the Parties promises and covenants not to commence or maintain any lawsuit against the other whether at law or in

*Settlement Agreement*
Page 3 of 7

Parties:   Susan L. Rhiel, Trustee
Christina Britton
AdvantaIRA Trust, LLC

equity in relation to any and all Claims (the "Covenant"). The Mutual Releases and Covenant are subject to the following:

a.   The Mutual Releases and Covenant are applicable to each of the Parties' respective affiliates, successors, assigns, predecessors, directors, officers, shareholders, members, board members, employees, representatives, attorneys, agents, counsel, sureties, and insurers, and the heirs, administrators, executors, successors, and assigns of each of them, and all those who claim through them or could claim through them, whether acting in such capacity or individually. For the purpose of the Mutual Releases and Covenant, the term "Parties" includes AdvantaIRA, and AdvantaIRA will be treated as a third-party beneficiary subject to all releases and covenants from the Trustee.

b.   For the purpose of the Mutual Releases and Covenant, the term "Claim" means any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, bond claims, claims against public funds, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, whether existing now or to come into existence in the future, as it relates to any relationship between the Parties, the Bankruptcy Case, the Adversary Proceeding, or any other conceivable claim between the Parties, whether such Claims arise at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever one Party may have against the other.

c.   Each of the Parties represents and warrants that they have not filed or reported any claims or complaints against the other Party in any forum and that neither have they assigned to any third party nor filed with any agency or court any claim released by this section.

d.   Each Party acknowledges that it would not be entitled to the consideration under this Agreement, including the payment of the Settlement Amount, absent the Mutual Releases and Covenant.

5.   **Dismissal of Adversary Proceeding**. After Court Approval and receipt by the Trustee of the full amount of the Settlement Amount, the Parties will execute and file within the Adversary Proceeding a stipulation of dismissal with prejudice of the claims raised against Ms. Britton and AdvantaIRA in the Adversary Proceeding, in a form substantially similar to that attached to this Agreement.

6.   **Waiver of Claims against Bankruptcy Estate**. Ms. Britton waives the right to file claims against the Bankruptcy Estate in relation to the Settlement and Settlement Amount. In addition, Ms. Britton agrees that any existing or future proof of claim filed in the Bankruptcy Case shall be and hereby is waived, released, and withdrawn, including but not limited to Claim No. 31.

Parties:    Susan L. Rhiel, Trustee
Christina Britton
AdvantaIRA Trust, LLC

7.  **Representations and Warrants.** Each of the Parties represents and warrants that it is duly authorized to enter into this agreement as set forth by the signature of each Party below. Each Party is acting under its own accord, has reviewed the terms of this Agreement, and is entering into this Agreement with full knowledge of its provisions and the effect thereof.

8.  **Breach of Agreement.** The Parties expressly reserve their right to enforce a breach of this Agreement. Nothing in this Agreement will be construed as prohibiting the non-breaching party from pursuing any remedies available for such breach, including the recovery of damages and the costs incurred by the non-breaching party to enforce the terms of this Agreement, including its reasonable attorneys' fees. In the event of a breach of the payment obligations under this Agreement by Ms. Britton, and in the absence of a cure of the breach within ten (10) business days of written demand, the Trustee, at her election, may either terminate this Agreement and proceed with any and all claims in the Adversary Proceeding, or the Trustee may seek to enforce this Agreement by specific performance. Ms. Britton waives any defenses or arguments related to the delay of the Adversary Proceeding that arise out of the Parties' efforts to settle the Adversary Proceeding and any delay caused by the Court Approval Process.

9.  **Miscellaneous Provisions.**

    a.  **No Admission.** Nothing contained in this Agreement will be construed as an admission of any liability by any Party to this Agreement of any claims alleged by any Party.

    b.  **Binding Effect; No Assignments; No Third-Party Benefit.** Except as to the Trustee in the paragraph defining Court Approval, this Agreement is binding upon the Parties and upon, as applicable, their respective heirs, administrators, representatives, executors, successors, and assigns. No Party may assign either this Agreement or any of its rights, interests, or obligations under this Agreement without prior written approval of the other Party. None of the provisions of this Agreement are for the benefit of, or enforceable by, any person that is not a Party, nor will any provisions be deemed to create any right in any person not a Party to this Agreement.

    c.  **Severability.** If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable. It is the intention of the Parties that if any provision of this Agreement is susceptible of two or more constructions, one which would render the provision enforceable and the other or others of which would render the provision unenforceable, then the provision will have the meaning that renders it enforceable.

d. **Modifications to Agreement.** No provision of this Agreement may be modified or discharged unless that modification or discharge is agreed to in writing and signed by all Parties. Certain provisions may only be modified with Court Approval, the determination of which is at the sole discretion of the Trustee. No provision of this Agreement may be waived unless such waiver is in writing and signed by the party to be charged with the waiver. No waiver of a breach under this Agreement will be deemed a waiver of any other provisions of the Agreement or any other breaches.

e. **Entire Agreement.** This Agreement contains the entire agreement of the Parties about the subjects in it, and it replaces all prior contemporaneous oral or written agreements, understandings, statements, representations and promises by any Party.

f. **Effect of Termination of Agreement on Adversary Proceeding.** In the event this Agreement is terminated—whether that termination arises from agreement of the Parties, denial of Court Approval, breach, or any other matter—the Parties agree that all matters related to the Adversary Proceeding will be reset as if the settlement never occurred, should the Trustee elect to proceed with the Adversary Proceeding. In particular, Ms. Britton shall agree to a case schedule appropriate for the Adversary Proceeding notwithstanding any delay in those proceedings due to the settlement process.

g. **Governing Law; Venue.** This Agreement will be governed by the laws of the State of Ohio or the Bankruptcy Code, as applicable. All matters related to this Agreement must be filed in the Bankruptcy Court.

h. **Counterpart Execution.** This Agreement may be executed in several counterparts and, as so executed, will constitute one agreement binding on all Parties, notwithstanding that all Parties have not signed the original or the same counterpart. Digital images, faxes, and photocopies of this Agreement and the signatures are sufficient for enforcement of this Agreement.

i. **Notices.** All notices and other communications under this Agreement must be mailed by nationally recognized overnight courier or delivered by personal service. Notices are deemed delivered when received. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice was given shall be deemed to be a receipt of the notice, request or other communication. Notices will be sent to the addresses set forth at the beginning of this Agreement, which notice address may be changed by giving notice of the change in writing.

j. **Further Assurances.** The Parties agree to freely execute any and all additional documents required to give this Agreement its full effect.

k. **Force Majeure.** Time is of the essence for all provisions of this Agreement, however the Parties shall be excused for the period of any delay in performance of any obligations hereunder when prevented from doing so by the wrongful or negligent acts or omissions of the other Party or by causes beyond either Party's

control, which shall include epidemics, pandemics, disease, illness or quarantine. If any such event prevents one of the Parties from performance of any obligations hereunder, counsel for the Parties shall meet and confer regarding an extended deadline.

l.   **Headings for Convenience Only.** The headings to the sections of this Agreement have been inserted for convenience only and will in no way modify or restrict any provisions hereof or be used to construe any such provisions.

m.   **Representation of Parties and Joint Drafting.** All of the Parties have had the opportunity to have this Agreement reviewed by the appropriate professionals and each Party is deemed to have been represented in this transaction. The Parties are deemed to have jointly drafted this Agreement, and no interpretation will be construed against any Party as the drafter.

**[EXECUTION ON FOLLOWING PAGE]**

*Settlement Agreement*
Page 7 of 7

Parties:    Susan L. Rhiel, Trustee
Christina Britton
AdvantaIRA Trust, LLC

## SIGNATURES

By execution this Agreement, the Parties each acknowledge that they are in agreement with the foregoing provisions and that this Agreement shall be a binding as set forth within the Agreement.

_____          11. 11. 20 20
**Christina Britton**                              Date

_____          11 | 23 | 20
**Susan L. Rhiel, Chapter 7 Trustee**            Date
**for Hadsell Chemical Processing**
**Case No. 17-52717**

# DISMISSAL STIPULATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 17-52717 |
| Hadsell Chemical Processing, LLC | : | Chapter 7 |
| | : | |
| Debtor. | : | Judge John E. Hoffman, Jr. |

| | | |
|---|---|---|
| Susan L. Rhiel, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No.: 19-02037 |
| | : | |
| vs. | : | |
| | : | |
| Christina Britton, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## NOTICE OF STIPULATED DISMISSAL WITH PREJUDICE

Pursuant to Federal Rule of Civil Procedure 41(a)(1), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7041, and the authority granted pursuant to the *Order Granting Trustee's Motion to Compromise Claims with Christina Britton* (Bankruptcy Case Doc. ____), the Plaintiff Susan L. Rhiel, Chapter 7 Trustee, and all Defendants, jointly and

1

mutually, stipulate to the dismissal of all counts against all defendants in this adversary proceeding.

This dismissal is **with prejudice**.

Respectfully submitted,

_____
Beth M. Miller (0072747)
THE LAW OFFICE OF BETH M. MILLER, LLC
81 Mill Street, Suite 300
Gahanna, OH 43230
Telephone: (614) 221-4670
Email: miller@bmillerlawoffice.com

*Attorney for Chapter 7 Trustee*

_____
(per e-mail authority on _____)
David M. Whittaker (0019307)
ISAAC WILES BURKHOLDER
& TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, OH 43215
Telephone: (614) 340-7431
Facsimile:  (614) 365-9516
Email: dwhittaker@isaacwiles.com

*Attorney for Defendants*

2

# SETTLEMENT AGREEMENT

This *Settlement Agreement* (the "Agreement") is made by (the "Parties"):

- **Susan L. Rhiel**, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Hadsell Chemical Processing (the "Debtor")
  c/o Beth M. Miller, Esq.
  THE LAW OFFICE OF BETH M. MILLER, LLC
  81 Mill Street, Suite 300
  Gahanna, OH 43230

- **Christian L. Bonasso ("Mr. Bonasso")**, an individual
  2262 Yorkshire Road
  Upper Arlington, OH 43221

## RECITALS

A.    The Trustee is the duly appointed, qualified and acting trustee appointed in the Chapter 7 bankruptcy case of the Debtor, which case is pending in the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division (the "Bankruptcy Court"), and assigned case number 17-52717 (the "Bankruptcy Case").

B.    On April 27, 2019, the Trustee initiated an adversary proceeding captioned *Rhiel v. Bonasso, et al.*, Adv. Pro. No. 19-02038 (the "Adversary Proceeding"), through which the Trustee made claims against Mr. Bonasso related to alleged fraudulent transfers received from the Debtor. In addition to the claims stated against Mr. Bonasso, the Trustee also sued AdvantaIRA Trust, LLC ("AdvantaIRA,") in its capacity as an account servicer for one or more accounts benefitting or belonging to Mr. Bonasso.

C.    Mr. Bonasso denies the Trustee's claims in the Adversary Proceeding.

D.    The Parties have agreed to terms of a settlement of all claims in the Adversary Proceeding (the "Settlement").

## TERMS OF AGREEMENT

In consideration of the promises contained in this Agreement and for other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.    **Court Approval.** This Agreement is contingent upon the approval of the Bankruptcy Court in accordance Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Court Approval"). Court Approval occurs upon the entry of an order approving the proposed compromise and this Agreement. That order may only be entered after notice of the

proposed compromise and a chance to object is given to all interested parties, which objections may be heard by the Court at a hearing. The Trustee will work in a commercially reasonable manner to obtain Court Approval of the Agreement, which will not be sought until payment is received in the manner set forth below. Mr. Bonasso acknowledge that the approval of any motion in the Bankruptcy Case may be contested and the Trustee cannot represent how long the approval process will take. Moreover, certain parties may have appeal rights that may further affect the timing of obtaining Court Approval. Delays caused by or related to obtaining Court Approval will not be grounds for default under this Agreement and will not nullify this Agreement. This Agreement is not binding on the Trustee in any respect until the Trustee receives Court Approval of this Agreement. Notwithstanding the foregoing, the Agreement remains binding on Mr. Bonasso in consideration of the promises already exchanged and the Trustee taking the actions necessary to obtain Court Approval. In the event the Bankruptcy Court does not approve this Agreement, upon the entry of a final, non-appealable order denying the approval of this Agreement, the Agreement will immediately terminate and will be considered a nullity. Within a reasonable time thereafter, any funds paid under this Agreement to the Trustee will be returned to Mr. Bonasso, and the Parties will be released from all obligations and liabilities under this Agreement.

2.      **Payment of Settlement Amount**. Mr. Bonasso shall pay to the Trustee the sum of *Twenty-Nine Thousand Four-Hundred Forty-Five Dollars and No Cents* **($29,445.00)** (the "Settlement Amount"). The Settlement Amount will be paid as follows:

   a.   Within fifteen (15) business days of execution of this Agreement, Mr. Bonasso may deposit the full Settlement Amount into the IOLTA trust account of Mr. Bonasso's counsel. Those funds will be held in trust by Mr. Bonasso's counsel until Court Approval is received. Within fifteen (15) business days of obtaining Court Approval, Mr. Bonasso's counsel will pay the Settlement Amount to the Trustee.

3.      **Manner of Payment**. All payments under this Agreement will be made in ordinary U.S. funds via a certified check or an IOLTA trust check payable to "Susan L. Rhiel, Trustee", with the case number for the Bankruptcy Case referenced on the check. Payment will be delivered to the Trustee at the following address:

   Susan L. Rhiel, Trustee
   THE LAW OFFICE OF BETH M. MILLER, LLC
   P.O. Box 307337
   Columbus, Ohio 43230

4.      **Release and Waiver of Claims; and Covenant Not to Sue.** Upon Court Approval and upon payment of the Settlement Amount, in exchange for the promises and other consideration made under this Agreement, the receipt and sufficiency is expressly acknowledged, each of the Parties forever release the other from any and all Claims, as defined below (the "Mutual Releases"). In addition, each of the Parties promises and covenants not to commence or maintain any lawsuit against the other whether at law or in

Case 2:17-bk-52717   Doc 274   Filed 01/08/21   Entered 01/08/21 10:02:48   Desc Main
Document   Page 68 of 84

*Settlement Agreement*
Page 3 of 7

Parties:   Susan L. Rhiel, Trustee
Chrisitan L. Bonasso
AdvantaIRA Trust, LLC

equity in relation to any and all Claims (the "Covenant"). The Mutual Releases and Covenant are subject to the following:

    a.   The Mutual Releases and Covenant are applicable to each of the Parties' respective affiliates, successors, assigns, predecessors, directors, officers, shareholders, members, board members, employees, representatives, attorneys, agents, counsel, sureties, and insurers, and the heirs, administrators, executors, successors, and assigns of each of them, and all those who claim through them or could claim through them, whether acting in such capacity or individually. For the purpose of the Mutual Releases and Covenant, the term "Parties" includes AdvantaIRA, and AdvantaIRA will be treated as a third-party beneficiary subject to all releases and covenants from the Trustee.

    b.   For the purpose of the Mutual Releases and Covenant, the term "Claim" means any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, bond claims, claims against public funds, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, whether existing now or to come into existence in the future, as it relates to any relationship between the Parties, the Bankruptcy Case, the Adversary Proceeding, or any other conceivable claim between the Parties, whether such Claims arise at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever one Party may have against the other.

    c.   Each of the Parties represents and warrants that they have not filed or reported any claims or complaints against the other Party in any forum and that neither have they assigned to any third party nor filed with any agency or court any claim released by this section.

    d.   Each Party acknowledges that it would not be entitled to the consideration under this Agreement, including the payment of the Settlement Amount, absent the Mutual Releases and Covenant.

**5.**    **Dismissal of Adversary Proceeding**. After Court Approval and receipt by the Trustee of the full amount of the Settlement Amount, the Parties will execute and file within the Adversary Proceeding a stipulation of dismissal with prejudice of the claims raised against Mr. Bonasso and AdvantaIRA in the Adversary Proceeding, in a form substantially similar to that attached to this Agreement.

**6.**    **Waiver of Claims against Bankruptcy Estate**. Mr. Bonasso waives the right to file claims against the Bankruptcy Estate in relation to the Settlement and Settlement Amount. In addition, Mr. Bonasso agrees that any existing or future proof of claim filed in the Bankruptcy Case shall be and hereby is waived, released, and withdrawn, including but not limited to Claim No. 34.

7.    **Representations and Warrants.** Each of the Parties represents and warrants that it is duly authorized to enter into this agreement as set forth by the signature of each Party below. Each Party is acting under its own accord, has reviewed the terms of this Agreement, and is entering into this Agreement with full knowledge of its provisions and the effect thereof.

8.    **Breach of Agreement.** The Parties expressly reserve their right to enforce a breach of this Agreement. Nothing in this Agreement will be construed as prohibiting the non-breaching party from pursuing any remedies available for such breach, including the recovery of damages and the costs incurred by the non-breaching party to enforce the terms of this Agreement, including its reasonable attorneys' fees. In the event of a breach of the payment obligations under this Agreement by Mr. Bonasso, and in the absence of a cure of the breach within ten (10) business days of written demand, the Trustee, at her election, may either terminate this Agreement and proceed with any and all claims in the Adversary Proceeding, or the Trustee may seek to enforce this Agreement by specific performance. Mr. Bonasso waives any defenses or arguments related to the delay of the Adversary Proceeding that arise out of the Parties' efforts to settle the Adversary Proceeding and any delay caused by the Court Approval Process.

9.    **Miscellaneous Provisions.**

    a.   **No Admission.** Nothing contained in this Agreement will be construed as an admission of any liability by any Party to this Agreement of any claims alleged by any Party.

    b.   **Binding Effect; No Assignments; No Third-Party Benefit.** Except as to the Trustee in the paragraph defining Court Approval, this Agreement is binding upon the Parties and upon, as applicable, their respective heirs, administrators, representatives, executors, successors, and assigns. No Party may assign either this Agreement or any of its rights, interests, or obligations under this Agreement without prior written approval of the other Party. None of the provisions of this Agreement are for the benefit of, or enforceable by, any person that is not a Party, nor will any provisions be deemed to create any right in any person not a Party to this Agreement.

    c.   **Severability.** If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable. It is the intention of the Parties that if any provision of this Agreement is susceptible of two or more constructions, one which would render the provision enforceable and the other or others of which would render the provision unenforceable, then the provision will have the meaning that renders it enforceable.

d. **Modifications to Agreement.** No provision of this Agreement may be modified or discharged unless that modification or discharge is agreed to in writing and signed by all Parties. Certain provisions may only be modified with Court Approval, the determination of which is at the sole discretion of the Trustee. No provision of this Agreement may be waived unless such waiver is in writing and signed by the party to be charged with the waiver. No waiver of a breach under this Agreement will be deemed a waiver of any other provisions of the Agreement or any other breaches.

e. **Entire Agreement.** This Agreement contains the entire agreement of the Parties about the subjects in it, and it replaces all prior contemporaneous oral or written agreements, understandings, statements, representations and promises by any Party.

f. **Effect of Termination of Agreement on Adversary Proceeding.** In the event this Agreement is terminated—whether that termination arises from agreement of the Parties, denial of Court Approval, breach, or any other matter—the Parties agree that all matters related to the Adversary Proceeding will be reset as if the settlement never occurred, should the Trustee elect to proceed with the Adversary Proceeding. In particular, Mr. Bonasso shall agree to a case schedule appropriate for the Adversary Proceeding notwithstanding any delay in those proceedings due to the settlement process.

g. **Governing Law; Venue.** This Agreement will be governed by the laws of the State of Ohio or the Bankruptcy Code, as applicable. All matters related to this Agreement must be filed in the Bankruptcy Court.

h. **Counterpart Execution.** This Agreement may be executed in several counterparts and, as so executed, will constitute one agreement binding on all Parties, notwithstanding that all Parties have not signed the original or the same counterpart. Digital images, faxes, and photocopies of this Agreement and the signatures are sufficient for enforcement of this Agreement.

i. **Notices.** All notices and other communications under this Agreement must be mailed by nationally recognized overnight courier or delivered by personal service. Notices are deemed delivered when received. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice was given shall be deemed to be a receipt of the notice, request or other communication. Notices will be sent to the addresses set forth at the beginning of this Agreement, which notice address may be changed by giving notice of the change in writing.

j. **Further Assurances.** The Parties agree to freely execute any and all additional documents required to give this Agreement its full effect.

k. **Force Majeure.** Time is of the essence for all provisions of this Agreement, however the Parties shall be excused for the period of any delay in performance of any obligations hereunder when prevented from doing so by the wrongful or negligent acts or omissions of the other Party or by causes beyond either Party's

control, which shall include epidemics, pandemics, disease, illness or quarantine. If any such event prevents one of the Parties from performance of any obligations hereunder, counsel for the Parties shall meet and confer regarding an extended deadline.

l.   **Headings for Convenience Only.** The headings to the sections of this Agreement have been inserted for convenience only and will in no way modify or restrict any provisions hereof or be used to construe any such provisions.

m.   **Representation of Parties and Joint Drafting.** All of the Parties have had the opportunity to have this Agreement reviewed by the appropriate professionals and each Party is deemed to have been represented in this transaction. The Parties are deemed to have jointly drafted this Agreement, and no interpretation will be construed against any Party as the drafter.

**[EXECUTION ON FOLLOWING PAGE]**

*Settlement Agreement*
Page 7 of 7

Parties:    Susan L. Rhiel, Trustee
Chrisitan L. Bonasso
AdvantalRA Trust, LLC

## SIGNATURES

By execution this Agreement, the Parties each acknowledge that they are in agreement with the foregoing provisions and that this Agreement shall be a binding as set forth within the Agreement.

_____        _____
**Christian L. Bonasso**                Date

_____        ___11│17│20_____
**Susan L. Rhiel, Chapter 7 Trustee**   Date
**for Hadsell Chemical Processing**
**Case No. 17-52717**

# DISMISSAL STIPULATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 17-52717 |
| Hadsell Chemical Processing, LLC | : | Chapter 7 |
| | : | |
| Debtor. | : | Judge John E. Hoffman, Jr. |

| | | |
|---|---|---|
| Susan L. Rhiel, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No.: 19-02038 |
| | : | |
| vs. | : | |
| | : | |
| Christian L. Bonasso, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## <u>NOTICE OF STIPULATED DISMISSAL WITH PREJUDICE</u>

Pursuant to Federal Rule of Civil Procedure 41(a)(1), made applicable to adversary

proceedings by Federal Rule of Bankruptcy Procedure 7041, and the authority granted pursuant to

the *Order Granting Trustee's Motion to Compromise Claims with Christian L. Bonasso*

(Bankruptcy Case Doc. _____), the Plaintiff Susan L. Rhiel, Chapter 7 Trustee, and all Defendants,

jointly and mutually, stipulate to the dismissal of all counts against all defendants in this adversary

proceeding. This dismissal is **with prejudice**.

      Respectfully submitted,


_____

Beth M. Miller (0072747)
THE LAW OFFICE OF BETH M. MILLER, LLC
81 Mill Street, Suite 300
Gahanna, OH 43230
Telephone: (614) 221-4670
Email: miller@bmillerlawoffice.com

*Attorney for Chapter 7 Trustee*


_____

(per e-mail authority on _____)
David M. Whittaker (0019307)
ISAAC WILES BURKHOLDER
& TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, OH 43215
Telephone: (614) 340-7431
Facsimile:  (614) 365-9516
Email: dwhittaker@isaacwiles.com

*Attorney for Defendants*

# SETTLEMENT AGREEMENT

This *Settlement Agreement* (the "Agreement") is made by the following (the "Parties"):

- **Susan L. Rhiel**, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Hadsell Chemical Processing (the "Debtor")
  c/o Richard K. Stovall, Esq.
  Allen Stovall Neuman Fisher & Ashton LLP
  17 S. High St., Ste. 1220
  Columbus, OH 43215

- **Christine Eaton ("Ms. Eaton")**, an individual
  523 Gleim
  Wheelersburg, OH 45694

## RECITALS

A.     The Trustee is the duly appointed, qualified and acting trustee appointed in the Chapter 7 bankruptcy case of the Debtor, which case is pending in the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division (the "Bankruptcy Court"), and assigned case number 17-52717 (the "Bankruptcy Case").

B.     On April 27, 2019, the Trustee initiated an adversary proceeding captioned *Rhiel v. Eaton, et al.*, Adv. Pro. No. 19-02052 (the "Adversary Proceeding"), through which the Trustee made claims against Ms. Eaton related to alleged fraudulent transfers received from the Debtor. The Trustee also made claims against Jonathan Eaton, an individual ("Mr. Eaton," with Ms. Eaton, the "Defendants").

C.     The Defendants deny the Trustee's claims in the Adversary Proceeding.

D.     The Parties have agreed to terms of a settlement of all claims in the Adversary Proceeding (the "Settlement").

## TERMS OF AGREEMENT

        In consideration of the promises contained in this Agreement and for other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.     **Court Approval.** This Agreement is contingent upon the approval of the Bankruptcy Court in accordance Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Court Approval"). Court Approval occurs upon the entry of an order approving the proposed compromise and this Agreement. That order may only be entered after notice of the proposed compromise and a chance to object is given to all interested parties, which objections may be heard by the Court at a hearing. The Trustee will work in a commercially reasonable manner to obtain Court Approval of the Agreement, which will not be sought

until payment is received in the manner set forth below. Ms. Eaton acknowledges that the approval of any motion in the Bankruptcy Case may be contested and the Trustee cannot represent how long the approval process will take. Moreover, certain parties may have appeal rights that may further affect the timing of obtaining Court Approval. Delays caused by or related to obtaining Court Approval will not be grounds for default under this Agreement and will not nullify this Agreement. This Agreement is not binding on the Trustee in any respect until the Trustee receives Court Approval of this Agreement. Notwithstanding the foregoing, the Agreement remains binding on Ms. Eaton in consideration of the promises already exchanged and the Trustee taking the actions necessary to obtain Court Approval. In the event the Bankruptcy Court does not approve this Agreement, upon the entry of a final, non-appealable order denying the approval of this Agreement, the Agreement will immediately terminate and will be considered a nullity. Within a reasonable time thereafter, any funds paid under this Agreement to the Trustee will be returned to Ms. Eaton, and the Parties will be released from all obligations and liabilities under this Agreement.

2.      **Payment of Settlement Amount**. Ms. Eaton will pay to pay to the Trustee the sum of *Six Thousand Five Hundred Dollars and No Cents* ($6,500.00) (the "Settlement Amount"). The Settlement Amount will be paid as follows:

   a.   Within five business days of execution of this Agreement, Ms. Eaton may deposit an initial amount of *Two Thousand Five Hundred Dollars and No Cents* ($2,500.00) (the "First Payment") into the IOLTA trust account of Ms. Eaton's counsel. Those funds will be held in trust by Ms. Eaton's counsel until Court Approval is received. Within five business days of obtaining Court Approval, Ms. Eaton's counsel will pay the First Payment to the Trustee.

   b.   Ms. Eaton may otherwise elect to immediately pay the First Payment to the Trustee, in which case Ms. Eaton will pay the First Payment to the Trustee within five business days of the execution of this Agreement. The Trustee will hold those funds in an account for the bankruptcy estate until such time as Court Approval is obtained. Once Court Approval is granted, the funds deposited in the Trustee's account will immediately become property of the bankruptcy estate.

   c.   Within 30 calendar days after Court Approval is granted, Ms. Eaton will pay an additional amount of *Two Thousand Dollars and No Cents* ($2,000.00) to the Trustee (the "Second Payment").

   d.   Within 60 calendar days after Court Approval is granted, Ms. Eaton will pay an additional amount of *Two Thousand Dollars and No Cents* ($2,000.00) to the Trustee (the "Third Payment"). Upon Payment of the First Payment, the Second Payment, and the Third Payment, the Settlement Amount will have been paid in full.

3.      **Manner of Payment**. All payments under this Agreement will be made in ordinary U.S. funds via a check or an IOLTA trust check payable to "Susan L. Rhiel, Trustee", with the case number (19-02052) for the Bankruptcy Case referenced on the check. Payment will be delivered to the Trustee at the following address:

> Susan L. Rhiel, Trustee
> The Law Office of Beth M. Miller, LLC
> P.O. Box 307337
> Columbus, Ohio 43230

4.      **Release and Waiver of Claims; and Covenant Not to Sue.** Upon Court Approval and upon payment of the Settlement Amount, in exchange for the promises and other consideration made under this Agreement, the receipt and sufficiency is expressly acknowledged, each of the Parties forever release the other from any and all Claims, as defined below (the "Mutual Releases"). In addition, each of the Parties promises and covenants not to commence or maintain any lawsuit against the other whether at law or in equity in relation to any and all Claims (the "Covenant"). The Mutual Releases and Covenant are subject to the following:

> a.    The Mutual Releases and Covenant are applicable to each of the Parties' respective affiliates, successors, assigns, predecessors, directors, officers, shareholders, members, board members, employees, representatives, attorneys, agents, counsel, sureties, and insurers, and the heirs, administrators, executors, successors, and assigns of each of them, and all those who claim through them or could claim through them, whether acting in such capacity or individually. For the purpose of the Mutual Releases and Covenant, the term Parties also includes Mr. Eaton. However, any claims that Mr. Eaton may have against the Debtor or Bankruptcy Estate relating to his employment at Debtor, including claims for unpaid wages, commissions and/or other debts, are specifically preserved and excluded from the Mutual Releases.

> b.    For the purpose of the Mutual Releases and Covenant, the term "Claim" means any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, bond claims, claims against public funds, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, whether existing now or to come into existence in the future, as it relates to any relationship between the Parties, the Bankruptcy Case, the Adversary Proceeding, or any other conceivable claim between the Parties, whether such Claims arise at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever one Party may have against the other.

> c.    Each of the Parties represent and warrants that they have not filed or reported any claims or complaints against the other Party in any forum and that neither have they

assigned to any third party nor filed with any agency or court any claim released by this section.

    d.   Each Party acknowledges that it would not be entitled to the consideration under this Agreement, including the payment of the Settlement Amount, absent the Mutual Releases and Covenant.

**5.**    **Dismissal of Adversary Proceeding**. After Court Approval and receipt by the Trustee of the full amount of the Settlement Payment, the Parties will execute and file within the Adversary Proceeding a stipulation of dismissal with prejudice of the claims raised against the Eatons in the Adversary Proceeding, in a form substantially similar to that attached to this Agreement.

**6.**    **Waiver of Claims against Bankruptcy Estate**. Ms. Eaton waives the right to file a claim against the Bankruptcy Estate in relation to the Settlement. In addition, Ms. Eaton agrees that any existing or future proof of claim filed in the Bankruptcy Case shall be and hereby is waived, released, and withdrawn.

**7.**    **Representations and Warrants.** Each of the Parties represents and warrants that it is duly authorized to enter into this agreement as set forth by the signature of each Party below. Each Party is acting under its own accord, has reviewed the terms of this Agreement, and is entering into this Agreement with full knowledge of its provisions and the effect thereof.

**8.**    **Breach of Agreement.** The Parties expressly reserve their right to enforce a breach of this Agreement. Nothing in this Agreement will be construed as prohibiting the non-breaching party from pursuing any remedies available for such breach, including the recovery of damages and the costs incurred by the non-breaching party to enforce the terms of this Agreement, including its reasonable attorneys' fees. In the event of a breach of the payment obligations under this Agreement by Ms. Eaton, and in the absence of a cure of the breach within five business days of written demand, the Trustee, at her election, may either terminate this Agreement and proceed with any and all claims in the Adversary Proceeding, or the Trustee may seek to enforce this Agreement by specific performance. Ms. Eaton waives any defenses or arguments related to the delay of the Adversary Proceeding that arise out of the Parties' efforts to settle the Adversary Proceeding and any delay caused by the Court Approval Process.

**9.**    **Miscellaneous Provisions.**

    a.   **No Admission.** Nothing contained in this Agreement will be construed as an admission of any liability by any Party to this Agreement of any claims alleged by any Party.

    b.   **Binding Effect; No Assignments; No Third-Party Benefit.** Except as to the Trustee in the paragraph defining Court Approval, this Agreement is binding upon the Parties and upon, as applicable, their respective heirs, administrators, representatives, executors, successors, and assigns. No Party may assign either this Agreement or any of its rights, interests, or obligations under this Agreement

without prior written approval of the other Party. None of the provisions of this Agreement are for the benefit of, or enforceable by, any person that is not a Party, nor will any provisions be deemed to create any right in any person not a Party to this Agreement.

c. **Severability.** If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable. It is the intention of the Parties that if any provision of this Agreement is susceptible of two or more constructions, one which would render the provision enforceable and the other or others of which would render the provision unenforceable, then the provision will have the meaning that renders it enforceable.

d. **Modifications to Agreement.** No provision of this Agreement may be modified or discharged unless that modification or discharge is agreed to in writing and signed by all Parties. Certain provisions may only be modified with Court Approval, the determination of which is at the sole discretion of the Trustee. No provision of this Agreement may be waived unless such waiver is in writing and signed by the party to be charged with the waiver. No waiver of a breach under this Agreement will be deemed a waiver of any other provisions of the Agreement or any other breaches.

e. **Entire Agreement.** This Agreement contains the entire agreement of the Parties about the subjects in it, and it replaces all prior contemporaneous oral or written agreements, understandings, statements, representations and promises by any Party.

f. **Effect of Termination of Agreement on Adversary Proceeding.** In the event this Agreement is terminated—whether that termination arise from agreement of the Parties, denial of Court Approval, breach, or any other matter—the Parties agree that all matters related to the Adversary Proceeding will be reset as if the settlement never occurred, should the Trustee elect to proceed with the Adversary. In particular, Ms. Eaton will agree to a case schedule appropriate for the Adversary Proceeding notwithstanding any delay in those proceedings due to the settlement process.

g. **Governing Law; Venue.** This Agreement will be governed by the laws of the State of Ohio or the Bankruptcy Code, as applicable. All matters related to this Agreement must be filed in the Bankruptcy Court.

h. **Counterpart Execution.** This Agreement may be executed in several counterparts and, as so executed, will constitute one agreement binding on all Parties, notwithstanding that all Parties have not signed the original or the same counterpart. Digital images, faxes, and photocopies of this Agreement and the signatures are sufficient for enforcement of this Agreement.

i. **Notices.** All notices and other communications under this Agreement must be mailed by nationally recognized overnight courier or delivered by personal service. Notices are deemed delivered when received. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice was given shall be deemed to be a receipt of the notice, request or other communication. Notices will be sent to the addresses set forth at the beginning of this Agreement, which notice address may be changed by giving notice of the change in writing.

j. **Further Assurances.** The Parties agree to freely execute any and all additional documents required to give this Agreement its full effect.

k. **Time of the Essence.** Time is of the essence for all provisions of this Agreement.

l. **Headings for Convenience Only.** The headings to the sections of this Agreement have been inserted for convenience only and will in no way modify or restrict any provisions hereof or be used to construe any such provisions.

m. **Representation of Parties and Joint Drafting.** All of the Parties has had the opportunity to have this Agreement reviewed by the appropriate professionals and each Party is deemed to have been represented in this transaction. The Parties are deemed to have jointly drafted this Agreement, and no interpretation will be construed against any Party as the drafter.

**[EXECUTION ON FOLLOWING PAGE]**

*Settlement Agreement*
Page 7 of 7

Parties:   Susan L. Rhiel, Trustee
           Christine Eaton

## SIGNATURES

By execution this Agreement, the Parties each acknowledge that they are in agreement with the foregoing provisions and that this Agreement shall be a binding as set forth within the Agreement.

_____          04/13/20
**Christine Eaton**                       Date

_____          _____
**Susan L. Rhiel, Chapter 7 Trustee**     Date
**for Hadsell Chemical Processing, Case No. 17-52717**

*Settlement Agreement*                          Parties:    Susan L. Rhiel, Trustee
Page 7 of 7                                                  Christine Eaton

## SIGNATURES

By execution this Agreement, the Parties each acknowledge that they are in agreement with the
foregoing provisions and that this Agreement shall be a binding as set forth within the Agreement.


**Christine Eaton**                              Date

**Susan L. Rhiel, Chapter 7 Trustee**           Date   4/17/20
**for Hadsell Chemical Processing, Case No. 17-52717**

# DISMISSAL STIPULATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 17-52717 |
| Hadsell Chemical Processing, LLC | : | Chapter 7 |
| | : | |
| Debtor. | : | Judge John E. Hoffman, Jr. |

| | | |
|---|---|---|
| Susan L. Rhiel, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No.: 19-2052 |
| | : | |
| vs. | : | |
| | : | |
| Jonathan Eaton, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**NOTICE OF STIPULATED DISMISSAL WITH PREJUDICE**

Pursuant to Federal Rule of Civil Procedure 41(a)(1), made applicable to adversary

proceedings by Federal Rule of Bankruptcy Procedure 7041, and the authority granted pursuant to

the *Order Granting Trustee's Motion to Compromise Claims with Christine Eaton* (Bankruptcy

Case Doc. ____), Plaintiff Susan L. Rhiel, chapter 7 trustee, and the Defendants jointly and

1

mutually stipulate to the dismissal of all counts against all defendants in this adversary proceeding.

This dismissal is **with prejudice**.

Respectfully submitted,

| | |
|---|---|
| _____ | \_ /s/ Joseph C. Pickens_____ |
| Richard K. Stovall     (0029978) | (*per email authority on _____*) |
| Rick L. Ashton         (0077768) | Joseph C. Pickens (0076239) |
| James A. Coutinho     (0082430) | Taft Stettinius & Hollister LLP |
| Allen Stovall Neuman Fisher & Ashton LLP | 65 East State Street, Suite 1000 |
| 17 South High Street, Suite 1220 | Columbus, Ohio 43215 |
| Columbus, Ohio 43215 | Telephone: (614) 334-7106 |
| T: (614) 221-8500     F: (614) 221-5988 | Fax: (614) 221-4012 |
| stovall@asnfa.com; ashton@asnfa.com | Email: jpickens@taftlaw.com |
| coutinho@asnfa.com | *Attorney for Defendants* |
| *Attorneys for Plaintiff* | |

2